## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MICHAEL GAHAGAN**                                    **CIVIL ACTION**

**VERSUS**                                             **CASE NO. 14-2233**

**UNITED STATES CITIZENSHIP AND**                      **SECTION: "G" (1)**
**IMMIGRATION SERVICES**

### ORDER

In this action arising under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), Plaintiff Michael Gahagan ("Gahagan") seeks relief in connection with his request for agency records he claims that Defendant United States Citizenship and Immigration Services has unlawfully withheld.[1] Presently before the Court are Gahagan's two Motions for Summary Judgment.[2] Having reviewed the memoranda in support, the memoranda in opposition, the record, and the applicable law, the Court will grant-in-part and deny-in-part the pending motions.

### I. Background

#### A.    *Factual Background*

In his complaint, Plaintiff Michael W. Gahagan, an immigration attorney, alleges that he requested a copy of agency records so that he could effectively represent his client, Miztle Amador–Castillo ("Amador") in a removal hearing scheduled for October 8, 2014 at the Oakdale, Louisiana Immigration Court, where Amador is being detained pending the outcome of the removal hearing.[3] According to Gahagan, Defendant has custody and control over records he is seeking under

---

[1] Rec. Doc. 1 at p. 1.

[2] Rec. Doc. 10; Rec. Doc. 22.

[3] Rec. Doc. 1 at p. 1.

FOIA, and is an "agency" within the meaning of 5 U.S.C. § 552(f).[4]

Gahagan contends that he requested a copy of Amador's immigration file from the Oakdale, Louisiana Office of the Chief Counsel of United States Immigration and Customs Enforcement ("ICE") on June 6, 2014, pursuant to the Mandatory Access Law, 8 U.S.C. § 1229a(c)(2)(B) and INA § 240(c)(2)(B), in order to access information he required in order to properly defend Amador at his removal proceedings.[5]   Gahagan asserts that although he clearly indicated his right to the materials under the Mandatory Access Law, ICE refused to follow that law, and produced none of the information Gahagan requested.[6]

Gahagan contends that on July 24, 2014, he filed a FOIA request with Defendant, seeking Amador's Alien File ("A-File") and other information.[7] Gahagan asserts that on the following day, July 25, 2014, he filed a "Motion to Compel ICE Office of the Chief Counsel to Produce Respondent's Alien File Pursuant to INA § 240(c)(2)(B)" in the Oakdale Immigration Court.[8] This motion, according to Gahagan, was denied, on the basis that FOIA "is the only method that Plaintiff can use to obtain his client's A-File."[9] Gahagan asserts that Defendant acknowledged receipt of his FOIA request on July 27, 2014,[10] and in turn sent him "a portion of the requested information,"

---

[4] *Id.* at p .2.

[5] *Id.* at pp. 4–5.

[6] *Id.* at p. 5.

[7] *Id.* at pp. 5–6.

[8] *Id.* at p. 6.

[9] *Id.*

[10] *Id.* Gahagan also argues that "the government erroneous [sic] claims that the FOIA request was filed on July 27, 2014" even though he "properly filed" his request on July 24, 2014. *Id.*

which he received on August 25, 2014.[11]

Gahagan argues that "[f]ifty-one (51) pages of the information disclosed were unlawfully withheld from [him], and marked only with 'Referred to Immigration and Customs Enforcement' in violation of FOIA."[12] Also, Gahagan argues, "seventeen (17) pages of information disclosed were unlawfully fully redacted in violation of FOIA without the segregable portions of the information being disclosed."[13] Finally, Gahagan asserts, "the lawfully required *Vaughn* index fully describing the search methods employed and individually describing the lawful basis for each exemption on each page of information was not produced to [him] as mandated by FOIA."[14]

Gahagan asserts that he filed an appeal of Defendant's disclosure on August 28, 2014, "on the basis that information had been unlawfully withheld by the government," and also premised upon the argument that "a legally adequate search had not been conducted for the requested information as mandated by FOIA."[15] Gahagan avers that although more than 20 business days have elapsed since he filed his FOIA appeal, he has received "no substantive reply," a result he deems a "denial of his FOIA request pursuant to 5 U.S.C. § 552(a)(6)(A)(ii)."[16] According to Gahagan, Defendants' delay "is not attributable to him," and has "irreparably harmed" him, since he "will be unable to prepare adequately to defend Mr. Amador in his removal proceedings" due to his inability

---

[11] *Id.*

[12] *Id.*

[13] *Id.* at pp. 6–7.

[14] *Id.* at p. 7.

[15] *Id.*

[16] *Id.*

to "review any mitigating information in Mr. Amador's A-File."[17] This, according to Gahagan, will deprive Amador of "procedural due process or effective assistance of counsel," as guaranteed by the Fifth and Sixth Amendments to the United States Constitution.[18]

Gahagan asserts that he has exhausted his administrative remedies in connection with his FOIA requests, making the instant action his only available remedy.[19] He seeks attorney's fees pursuant to the Equal Access to Justice Act[20] and FOIA,[21] as well as declaratory and injunctive relief finding that Defendant "exceeded the legal FOIA response time of twenty days," and ordering Defendant "to respond to [his] FOIA request . . . conduct a reasonable and adequate search for the requested information, produce forthwith any and all non-exempt records responsive to [his request] . . . and produce a *Vaughn* Index of any responsive records withheld under claim of exemption."[22] He also urges the Court to "[e]njoin the [Defendant] from continuing to withhold any and all non-exempt records responsive to [his] FOIA request."[23]

---

[17] *Id.*

[18] *Id.*

[19] *Id.* at p. 8.

[20] 28 U.S.C. § 2412.

[21] 5 U.S.C. § 522(a)(4)(E).

[22] *Id.* at p. 9.

[23] *Id.* at p. 10.

**B.     Procedural Background**

Gahagan filed his complaint on September 27, 2014.[24] He filed a "Motion for Summary Judgment" on November 16, 2014.[25] Defendant filed an opposition on December 2, 2014.[26] On December 5, 2014, with leave of Court, Gahagan filed a reply in further support of his motion.[27] On December 9, 2014, with leave of court, Defendant filed a sur-reply in further opposition to Gahagan's motion.[28] Gahagan filed a "Second Motion for Summary Judgment" on December 16, 2014.[29] On December 30, 2014, Defendant filed an opposition to Gahagan's second motion.[30] On January 2, 2015, with leave of Court, Gahagan filed a reply in further support of his second motion.[31]

## II. Parties' Arguments

**A.     Gahagan's "Motion for Summary Judgment"**

### 1.     Defendant's "Referral" of Documents to ICE

In his "Motion for Summary Judgment,"[32] Gahagan asserts that an agency receiving a FOIA request is required to "determine within 20 days . . . after the receipt of any such request whether

---

[24] Rec. Doc. 1.

[25] Rec. Doc. 10.

[26] Rec. Doc. 13.

[27] Rec. Doc. 16.

[28] Rec. Doc. 20.

[29] Rec. Doc. 21.

[30] Rec. Doc. 23.

[31] Rec. Doc. 26.

[32] Rec. Doc. 10.

to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor."[33] According to Gahagan, Defendant's decision to fully withhold "51 pages of responsive agency records" and to indicate that these documents had been "referred to [ICE]" are Defendant's "determination and the reasons therefore [sic]."[34] Gahagan maintains that referral to another agency is not a "reason therefor" recognized under FOIA, since referral is not one of the "nine specific reasons for a lawful FOIA exemption."[35]

Further, Gahagan asserts, Defendant did not seek a ten-day extension of time to respond, as allowed by FOIA where "unusual circumstances exist."[36] Even if Defendant had sought an extension, Gahagan argues, Defendant would have violated FOIA, since "none of the[] 51 pages of agency records have been produced to [him] to this day," and since "never-ending 'referral' is not allowed under FOIA's 'clearly delineated statutory language.'"[37] Gahagan contends that although unusual circumstances meriting a 10 day extension may exist where an agency needs to consult with another agency, FOIA does not provide government agencies with the statutory right to "'refer' responsive agency records to another agency and then refuse to produce the responsive agency records under FOIA, or to shirk [their] duty to respond under FOIA and transfer that duty to another agency that did not receive the FOIA request and is not a party to the FOIA lawsuit."[38] Rather,

---

[33] Rec. Doc. 10–2 at p. 9.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.* at p. 10.

Gahagan argues, "[t]he legal obligation to respond under FOIA exists exclusively with the agency to which the FOIA request is directed and which possesses the record at the time of the FOIA request."[39] Gahagan asserts that allowing Defendant to behave as it did in this case creates a scenario where Defendant  "can simply run out the clock until the District Court Judge dismisses the plaintiff's lawsuit with prejudice," frustrating FOIA requesters' efforts to enforce their rights under that statute and rendering FOIA "essentially meaningless."[40]

### 2. Defendant's Failure to Produce

Gahagan asserts that even if this Court concludes "that a governmental agency that receives a FOIA request does have the statutory right under FOIA to 'refer' responsive agency records to another agency that did not receive the FOIA request," FOIA "is clear that when an agency refers responsive agency records to another agency and does not produce those agency records to the FOIA requester within 20 business days as mandated by FOIA, it has improperly withheld agency records in violation of FOIA,"[41] since the agency that received the FOIA request "cannot transfer" to another agency its legal duty to disclose all responsive, non-exempt agency records.[42]

### a. Agency Records

Gahagan argues that the 51 disputed pages are "agency records under FOIA," because "even though [Defendant] claims that the 51 pages of improperly withheld agency records originated with ICE," the documents "were under the custody and control of [Defendant] at the time of [his] FOIA

---

[39] *Id.*

[40] *Id.* at pp. 10–11.

[41] *Id.* at p. 11.

[42] *Id.* at p. 15.

request," and Defendant is an "agency" as defined by FOIA.[43] Gahagan contends that since Defendant "has asserted none of the nine lawful FOIA exceptions for the 51 fully withheld pages of agency records," it "has a mandated duty to produce the agency records to [him] within 20 business days," and cannot "refuse to produce the agency records simply because they were 'Referred to [ICE].'"[44]

### b.    Withholding

Gahagan asserts that Defendant "is 'withholding' the 51 pages of agency records under FOIA," because Defendant "has still not produced the 51 pages of improperly withheld agency records to [him]," and continues to "unlawfully withhold" these documents "without citing a lawful exception to FOIA."[45] According to Gahagan, Defendant's actions demonstrate that it has "withheld" the records "within the meaning of FOIA," since the "net effect" of Defendant's action "is significantly to impair [his] ability to obtain the records or significantly to increase the amount of time he must wait to obtain them;" he further claims that the Government has not met its burden of disproving either of these assertions.[46]

### c.    Improper

Gahagan avers that the 51 pages "have clearly been unjustifiably withheld," and that Defendant "is clearly conducting an 'improper' withholding of agency records, because it (1) has not offered a 'reasonable explanation for its referral procedure and [2] its withholding of the 51

---

[43] *Id.* at pp. 15--16.

[44] *Id.*

[45] Rec. Doc. 17.

[46] *Id.*

pages of agency records has 'resulted in very long delays,' which the government has not lawfully justified."[47] These delays, Gahagan asserts, have "forc[ed] [him] to file the instant lawsuit and ensur[ed] ineffective assistance of counsel for Mr. Amador due to [Gahagan] not being able to view Mr. Amador's A-File and prepare adequately for trial."[48]

### d.    FOIA Violation

Gahagan contends that "the Government's improper withholding of agency records is a clear violation of FOIA," because it has "simply refuse[d] to act on the ground that the documents originated elsewhere."[49]

### 3.    Segregability

Gahagan next argues that Defendant "is unlawfully withholding segregable portions of responsive agency records," since it "fully withheld seventeen (17) pages of responsive agency records," thereby "preventing [him] and this Honorable Court from determining what the document is," frustrating efforts to ascertain "whether [Defendant] is being truthful with its exemption or description of the information, and whether its withholdings are lawful under FOIA's nine enumerated exemptions."[50] According to Gahagan, "[t]he law is clear that an overbroad abuse of FOIA exemptions is unlawful."[51]

Gahagan argues that Defendant has failed to meet its "burden of withholding factual

---

[47] *Id.* at p. 18.

[48] *Id.*

[49] *Id.* at p. 19.

[50] *Id.* at pp. 20–21.

[51] *Id.* at p. 21.

observations."[52] Specifically, Gahagan contends that Defendant's "(b)(5) exemption claims in Exhibit 6" are improper because "factual documents are not exempted because they do not fit the civil discovery privileges which frame the (b)(5) exemption's purpose."[53] Gahagan further contends that "factual documents are not exempt because they do not further the deliberative purpose of the (b)(5) exception," which protects "materials embodying officials' opinions," but not "factual information," since factual information is "disconnected from the deliberative process."[54]

Gahagan argues that Defendant has a duty to "segregate disclosable [information] from exempt portions of the same document," and "has the statutory burden of proving [both] exempt status and of proving the inability to reasonably segregate portions of the record."[55] In the present case, Gahagan asserts, Defendant "has not met its burden of proving that 'no segregable, nonexempt portions'" of the 17 fully redacted pages "remain withheld."[56] Gahagan contends that an agency "is entitled to prevail on a motion for summary judgment only when . . . [it] proves that it has fully discharged its obligations under the FOIA," and that here, Defendant has not met its burden of showing that "it is unable to reasonably segregate portions of the record."[57] Therefore, Gahagan contends, the Court should grant summary judgment in his favor, and order Defendant to release "the segregable, nonexempt portions of the 17 pages of responsive agency records in Plaintiff's

---

[52] *Id.*

[53] *Id.*

[54] *Id.* at pp. 21–22.

[55] *Id.* at pp. 22-23.

[56] *Id.* at p. 23.

[57] *Id.*

Exhibit 6."[58]

## B.     *Defendant's Opposition*

In opposition, Defendant argues that this Court should deny Gahagan's motion as moot, since Defendant has "fully processed and responded to [Gahagan's] FOIA request," having turned over to Gahagan 219 of 287 responsive documents upon Gahagan's FOIA request, and all or part of 17 additional pages following Gahagan's appeal of this disclosure.[59]

### 1.     Adequacy of Search

Defendant contends that a declaration by Jill Eggleston establishes that Defendant received Gahagan's FOIA request "on or about July 27, 2014," at which time Defendant conducted a search that yielded 287 pages of responsive documents, including an A-File.[60] Defendant asserts that it notified plaintiff that, "of the 287 responsive pages, 209 pages were being released in their entirety, 10 pages were being released in part, 17 pages were being properly withheld in full pursuant to FOIA exceptions, and 51 pages were being referred to another agency for direct response to [Gahagan]."[61] Defendant contends that after Gahagan appealed this response on August 25, 2014, it released "an additional 17 pages to [him]—1 page in part and 16 pages in full."[62]

Defendant argues that Ms. Eggleston's declaration is "clear," and "provides very specific details concerning the search of responsive documents," making it sufficient under the governing

---

[58] *Id.*

[59] Rec. Doc. 13 at pp. 1–2.

[60] *Id.* at p. 6.

[61] *Id.*

[62] *Id.*

case law.[63] Defendant contends that although Gahagan will imply that the search was "inadequate . . .merely because additional documents should have been discovered," the "correct focus for the Court" when considering the adequacy of the agency's search is "just that—the reasonableness and adequacy of the search," rather than its results.[64] Defendant argues that "an agency may demonstrate the adequacy of its search by submitting 'reasonably detailed, nonconclusory affidavits submitted in good faith," and that Ms. Eggleston's declaration is sufficient to carry its burden on this point.[65]

### 2. Redactions and Withholdings

Defendant contends that it made "appropriate redactions and withholdings pursuant to FOIA Exemptions 5, 6, 7(C) and (E), and that Ms. Eggleston's declaration qualifies as a proper *Vaughn* index, in that it "adequately describe[s] the record, state[s] what FOIA exemption(s) the agency claims, and explain(s) why the agency believes the record falls within the exemption."[66]

### a. Exemption 5

Defendant notes that "FOIA Exemption 5 allows for withholding of inter or intra agency documents that are normally privileged in the civil discovery context," and contends that it asserted this exemption as to "documents containing information . . . covered by the deliberative process and attorney client privileges."[67] According to Defendant, information withheld pursuant to this

---

[63] *Id.*

[64] *Id.* at pp. 6–7.

[65] *Id.* at p. 7.

[66] *Id.* at pp. 7–8.

[67] *Id.* at p. 8.

exemption "consist of correspondence, such as letters and emails, of a pre decisional nature, which discuss the existence of potential violations of law."[68]

###### b.      Exemption 6

Defendant states that "FOIA Exemption 6 exempts from disclosure personnel or medical files or similar files."[69] According to Defendant, information withheld pursuant to this exception "consist[s] of names, addresses, and other information relating to third parties that is considered personal," since "[t]he privacy interests of these individuals outweigh any minimal public interest in disclosure in the information."[70]

###### c.      Exemptions 7(C) and (E)

Defendant notes that Exemptions 7(C) and (E) "allow[] the withholding of information that identifies agency employees and third parties in law enforcement records."[71] According to Defendant, "the names of employees involved in this process and appropriate law enforcement records" were withheld pursuant to this exception.[72]

###### 3.      In Camera Review

Defendant contends that "a thorough *in–camera* inspection of withheld documents is not the preferred method of determining the appropriateness of the government agency's characterization of the withheld information where the information is extensive and the claimed exemptions are

---

[68] *Id.*

[69] *Id.* at p. 9.

[70] *Id.*

[71] *Id.*

[72] *Id.*

many."[73] Rather, Defendant argues, *in camera* review "is to be utilized only in the rare case where the disputed documents are relatively few in number and there are few claimed exemptions," and where "agency affidavits are insufficiently detailed to permit review of exemption claims," or if "there is evidence of bad faith, [the] number of documents is relatively small, and [the] dispute turns on [the] contents of withheld documents and not on parties' interpretation of them."[74] In the present case, Defendant argues, the dispute turns on "minor redactions and withholdings," which "do not rise to the levels that require an *in camera* review."[75] Utilizing *in camera* review in this case, Defendant argues, "would be a waste of judicial resources and also run afoul of the established precedent."[76]

### 4. Referral

Defendant argues that it is permitted to "refer documents to another agency for direct response to the requestor," and that such referral is "a routine practice."[77] Indeed, Defendant maintains, "FOIA explicitly permits 'consultation . . . with another agency having a substantial interest in the determination of the request,'"[78] and "[a]n agency may adopt procedures by which documents in the agency's possession, but which did not originate with the agency, may be referred

---

[73] *Id.*

[74] *Id.* at pp. 9–10.

[75] *Id.* at p. 10.

[76] *Id.*

[77] *Id.*

[78] *Id.* (citing 5 U.S.C. § 552(a)(6)(B)(iii)(III)).

14

to the originating agency for processing."[79] Defendant maintains that, under a rule set forth by the United States Court of Appeals for the District of Columbia Circuit in *McGehee v. C.I.A.*, a referral system amounts to a "withholding" under FOIA where "its net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them."[80]

Defendant argues that the referral process at issue in this case is "quite common," and that Gahagan has "encountered this referral process in several matters," in each of which "the referred documents were processed and released to [Gahagan] by ICE."[81] Further, Defendant maintains, "[Gahagan's] ability to obtain the documents was not significantly impaired . . . [and] the time to obtain the same was not significantly increased."[82] Here, Defendant asserts, "only a small fraction of the responsive documents were referred to ICE"—a total of 51 out of 287 responsive documents.[83] "Such a minimal referral," Defendant argues, when "coupled with the routine nature of the same," should not constitute an improper withholding under *McGehee*.[84]

### 5.    Segregability

Defendant also takes issue with Gahagan's assertion at it is "inappropriate" to "redact pages

---

[79] *Id.*

[80] *Id.* at p. 11 (citing 697 F.2d 1095, 1110 (D.C. Cir. 1983)).

[81] *Id.*

[82] *Id.*

[83] *Id.*

[84] *Id.*

of information *in toto* without disclosing the segregable portions of the information."[85] Defendant

argues that Gahagan would only be correct on this point if the agency is capable of segregating some

of the record, but fails to do so.[86] Defendant argues that in the present case, it "testified that it could

not segregate any portion of the documents withheld in full," and that such testimony satisfies its

burden of proof.[87]

## C.   *Gahagan's Reply*

In further support of his motion, Gahagan argues that Defendant's "referral" and its "refusal

to produce responsive agency records" within 20 working days is "clearly unawful" pursuant to §

552(a)(6)(A)(I) of FOIA.[88] Gahagan argues that Defendant's decision to withhold 51 full pages of

records has "impos[ed] very large burdens" on him, since, without the documents, he is "certain to

provide ineffective assistance of counsel for his client."[89]

### 1.      Referral

Gahagan argues that, contrary to Defendant's assertion, he has "never litigated a case like

the one at bar where a government agency 'referred' responsive agency records to another agency"

and then "voluntarily disclosed" the records to him "after the FOIA lawsuit was dismissed."[90]

Indeed, Gahagan argues, he "was forced to file an appeal" to the Fifth Circuit in one case, and did

---

[85] *Id.*

[86] *Id.*

[87] *Id.* at pp. 11–12.

[88] Rec. Doc. 16 at p. 2.

[89] *Id.* at p. 3.

[90] *Id.*

not receive the documents from the government until after he had completed "weeks of research and drafting," and after weeks had passed after serving the government.[91] In any event, Gahagan contends, Defendant has not cited a legal basis for its referral, "other than it being 'routine practice' and 'quite common,' which is clearly in violation of FOIA under even the most liberal reading of the law."[92]

### 2.   Withholding

Gahagan maintains that although he still has not received 51 pages of responsive records from Defendant, none of the nine statutory exemptions have been invoked to justify the withholding.[93] Gahagan claims that Defendant's assertion that "the documents originated elsewhere," justifying a refusal to produce, "clearly violates FOIA."[94]

### 3.   Segregability

Referring the Court to his motion for summary judgment, Gahagan argues that Defendant "has unlawfully withheld segregable portions of information," in violation of § 552(b)(9) of FOIA.[95]

### 4.   Adequacy of Search

Gahagan contends that although Defendant maintains that "it has conducted an adequate search of the requested information," it has not "disclosed specifically who conducted the search, what methods were sued or which files were searched a required by FOIA," and has not provided

---

[91] *Id.*

[92] *Id.* at p. 5.

[93] *Id.*

[94] *Id.* at p. 6.

[95] *Id.*

evidence showing "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."[96] Gahagan further contends that a government agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents," and "agency affidavits that 'do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedures utilized are insufficient to support summary judgment" for Defendant.[97]

Gahagan asserts that instead of stating who conducted the search at issue here, Defendant's affidavit only states that "[a]n unknown person described only as 'NRC'" is identified."[98] Thus, Gahagan maintains, "unless there is a person at the USCIS National Records Center whose name . . . is 'National Records Center,' [Defendant's] argument that Jill A. Eggleston's affidavit 'provides very specific details concerning the search . . . is laughable."[99] Gahagan argues that Defendant "has also refused to explain what methods it used to produce the information requested or whether those methods were reasonably expected to produce the requested information."[100] Instead, Gahagan contends, Defendant's affiant "simply asks this Honorable Court to *trust her*."[101]

---

[96] *Id.* at p. 7.

[97] *Id.* at pp. 7–8.

[98] *Id.* at p. 8.

[99] *Id.*

[100] *Id.*

[101] *Id.*

Therefore, Defendant's affidavits do not "meet the mandate of FOIA," and the Court should not accept their "boilerplate" language "in lieu of following the law."[102]

Gahagan also argues that Defendants "refuse[] to explain why the NRC was the only office searched, and why no other locations should be searched, and why other locations were not searched," and maintains that although Ms. Eggleston swore that Defendant contacted ICE in New Orleans requesting a search, "there is no evidence, or even an allegation, that a search was ever conducted at that location."[103]

Thus, Gahagan argues, since Defendant "has submitted a conclusory declaration that fails to explain the reasonableness and adequacy of its FOIA search," Defendant "has not met its burden of proof, and [Gahagan's] motion for summary judgment should be granted."[104]

## D.     *Defendants' Sur-Reply*

### 1.     Referral

In further opposition to Gahagan's motion, Defendant contends that Gahagan's arguments regarding referral are "now moot" because ICE, the agency that received Defendant's referral, "has now responded to [Gahagan], releasing all exempt material in the referral."[105] Regardless, Defendant argues, "FOIA explicitly permits 'consultation . . . with another agency having a substantial interest in the determination of the request," and the "practice is supported by caselaw."[106] According to

---

[102] *Id.* at p. 9.

[103] *Id.*

[104] *Id.* at p. 10.

[105] Rec. Doc. 20 at pp. 1–2.

[106] *Id.* at p. 2.

19

Defendant, agencies "may adopt procedures by which documents in the agency's possession, but which did not originate with the agency, may be referred to the originating agency for processing."[107] Defendant argues that "a referral system constitutes a 'withholding' under FOIA 'if its net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them.'"[108] Here, Defendant asserts, "[i]t is established that the referral process . . . did not impair [Gahagan's] ability to obtain the records since ICE has already released all non-exempt material to [Gahagan]."[109]

### 2.   Redaction

Defendant further maintains that redaction of records *in toto* is appropriate when an agency is unable to segregate a portion of a record, and may satisfy its burden of proof under FOIA "through the submission of affidavits that identify the documents at issue and explain why they fall under the claimed exemption," as long as those affidavits are "clear, specific, and reasonably detailed while describing the withheld information in a factual and non-conclusory manner."[110] Here, Defendant contends, it submitted a sworn affidavit denying that there are any "reasonably segregable portions of the documents that are withheld in full," and, "without evidence of bad faith," that affidavit "should not be questioned."[111]

---

[107] *Id.*

[108] *Id.*

[109] *Id.*

[110] *Id.* at p. 3.

[111] *Id.*

### 3.     Adequacy of Search

Defendant argues that Ms. Eggleston's declaration is "quite descriptive" with regard to "who conducted the search, what methods were used," and "which files where searched."[112] Moreover, defendant contends, the declaration "provides sufficient detail as to the search undertaken."[113] Defendant contends that where, as here, "the adequacy of the agency's search is called into question, the correct focus for the Court is just that–the reasonableness and adequacy of the search," and not its results.[114] According to Defendant, an agency "may demonstrate the adequacy of its search by submitting 'reasoanbly detailed, nonconclusory affidavits' in good faith," and that it has done so here.[115]

### E.     *Gahagan's Second Motion for Summary Judgment*

Preliminarily, the Court notes that Gahagan attached a "Local Rule 56.1 Statement of Material Facts" to his second motion for summary judgment.[116] In that document, Gahagan states that on December 4, 2014 (after he filed his first motion for summary judgment on November 16, 2014) he received an e-mail message from ICE containing 51 pages of documents, "many withheld in part or *in toto*," including 10 pages "withheld *in toto* with only the word "duplicate" written on them.[117]

---

[112] *Id.*

[113] *Id.* at p. 5.

[114] *Id.*

[115] *Id.*

[116] Rec. Doc. 21–1.

[117] *Id.* at p. 4.

1.     **Vaughn Index**

In support of his second motion for summary judgment, Gahagan contends that although "an agency responding to a FOIA request must submit a *Vaughn* index with its FOIA response to legally justify its withholdings," Defendant here "failed to produce a *Vaughn* index justifying its withholdings on its most recent disclosure of responsive agency records, which were produced on December 4, 2014" after he filed his first motion for summary judgment.[118]

2.     ***In Camera* Inspection**

Gahagan asserts that the Government "should be ordered to produce the withheld agency records for an *in camera* inspection," because FOIA "clearly contemplates that courts will scrutinize closely any withholding of documents," and "where it is determined that records do exist, the District Court must do something more to assure itself of the factual basis and bona fides of the agency's claim of exemption than rely solely upon an affidavit."[119]

3.     **Withholding**

Gahagan argues that the Government has "improperly withheld" 10 pages of records from him without citing any of the statutory FOIA exemptions, on the basis that the withheld documents were "[d]uplicate[s]."[120] According to Gahagan, the "net effect" of this withholding is "significantly to impair [his] ability to obtain the records or significantly to increase the amount of time he must wait to obtain them," and Defendant "has not met its burden of proving otherwise."[121]

---

[118] Rec. Doc. 21–2 at p. 8.

[119] *Id.* at pp. 8–9.

[120] *Id.* at p. 15.

[121] *Id.* at p. 16.

### 4.      Segregability

Gahagan argues that, by withholding 10 pages of records *in toto*, Defendant has prevented him from determining what the documents are, and indeed has prevented "anyone from determining whether Defendant is being truthful with its exemption or description of the information, and whether its withholdings are lawful under FOIA's nine enumerated exemptions."[122] According to Gahagan, an "agency's burden of proof for withholding an entire document is heavy," and the agency "must show 'that no segregable, non-exempt portions remain withheld.'"[123] Here, Gahagan asserts, Defendant has not met its burden, since it has not proven that "it is unable to reasonably segregate portions of the record."[124]

## F.      *Defendant's Reply*

### 1.      *Vaughn* Index

In further opposition to Gahagan's motion, Defendant argues that Gahagan "is requesting the Court [to] order a non-party, ICE, to prepare a *Vaughn* index on duplicate documents," a request that is "inappropriate" since Gahagan "has only named USCIS in the instant lawsuit."[125] In any event, Defendant argues, "the withholdings made in the 51 referred documents (other than not producing duplicates) are very minimal[,]" and the Court "has sufficient information to analyze each exemption made for any withholding as any redaction is clearly marked with the FOIA exemption

---

[122] *Id.* at p. 20.

[123] *Id.* at p. 21.

[124] *Id.*

[125] Rec. Doc. 23 at p. 5.

asserted."[126] According to Defendant, "[t]he only pages 'withheld' in full were documents that were duplicates of documents already processed and released."[127] In these circumstances, Defendant asserts, "[r]equiring an agency to waste the time to redact a duplicate document for release is simply impractical and a complete waste of time."[128] Likewise, Defendant contends, "requiring the Court to conduct an *in camera* inspection of the duplicate materials is as senseless as requesting copies of the same."[129] Defendant argues that although Gahagan's memorandum is "quite lengthy," Gahagan "did not cite one case where a court ordered an agency to release duplicate documents," let alone "one case . . . that even discusses duplicate documents."[130]

Defendant argues that even though ICE is not a party to this lawsuit, the Court "still has sufficient information to analyze the remaining withholdings," since the "remaining redactions are exceedingly minimal and very straightforward."[131] Specifically, Defendant contends, "ICE made redactions pursuant to FOIA exemptions 5, 6, 7(C) and 7(E)," which have already been briefed, and "require little analysis," including "removing personal information, employee names, data, etc."[132] Thus, Defendant asserts, even though ICE is not a party to this lawsuit, "such minimal,

---

[126] *Id.* at p. 6.

[127] *Id.*

[128] *Id.*

[129] *Id.*

[130] *Id.*

[131] *Id.*

[132] *Id.*

straightforward redactions can be easily relied upon."[133]

## G.    *Gahagan's Reply*

### 1.    **Vaughn Index**

In further support of his motion, Gahagan argues that Defendant "curiously twists his request" that the Court order "Defendant [to] produce forthwith a *Vaughn* index of responsive agency records" into a request that the Court order ICE, a non-party, to prepare the *Vaughn* index.[134] Gahagan contends that "since there is only one Defendant in the instant lawsuit," he moved the Court to order that this Defendant, and not ICE, produce the *Vaughn* index.[135] Gahagan maintains that Defendant's "*ex post facto* attempt to transfer responsive agency records to a third party agency and remove the responsive agency documents . . . from this Honorable Court's jurisdiction, so that it can refuse to produce the legally mandated *Vaughn* index, is clearly misplaced," and without support in circuit courts' FOIA case law.[136]

Gahagan further objects to Defendant's characterization of its withholdings as "very minimal," and of his request for a *Vaughn* index as "impractical and a complete waste of time."[137] According to Gahagan, "both the Fifth Circuit and the District of Columbia Court of Appeals, which handles the vast majority of all FOIA lawsuits in America, have issued a mandate that a *Vaughn* index must be provided to the FOIA requestor to prove the legality of each and every withholding,"

---

[133] *Id.*

[134] Rec. Doc. 26 at p. 4.

[135] *Id.*

[136] *Id.* at p. 5.

[137] *Id.* at p. 6.

irrespective of "whether the government thinks that meeting its own burden of proof regarding its withholding of information . . . is a 'complete waste of time.'"[138]

### 2.    Withholding

Gahagan argues that Defendant "has not met its burden of proving that its *in toto* withholding of information under the label 'duplicate' is legally justified" under § 522(b)(1)–(9) of FOIA, since Defendant "cites not a single case" in support of the proposition that it may lawfully withhold documents by marking them as "duplicate."[139]

### III. Law and Analysis

*A.    Legal Standards*

### 1.    Summary Judgment

On a motion for summary judgment under Federal Rule of Civil Procedure 56, the Court will grant the moving party's request if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[140] The substantive law "identif[ies] which facts are material."[141] Material facts are those which "might affect the outcome of the suit."[142] A "genuine dispute" of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[143]

---

[138] *Id.*

[139] *Id.* at p. 7.

[140] Fed. R. Civ. P. 56(a).

[141] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[142] *Id.*

[143] *Rogers v. Bromac Title Serv., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (citations omitted).

In deciding a motion for summary judgment, the Court "construes all facts and inferences in the light most favorable to the nonmoving party."[144]When the nonmoving party will have the burden of proof on an issue at trial, summary judgment is only appropriate if the moving party establishes that "the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor."[145] Summary judgment "may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence,"[146] and even "when evidence exists in the summary judgment record but the nonmov[ing party] fails even to refer to it in response to the motion for summary judgment, that evidence is not properly before the district court."[147]

### 2.    FOIA

The Supreme Court has stated that "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."[148] Toward that end, FOIA is intended to "facilitate public access to government documents," and was "designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."[149] FOIA establishes a "strong presumption in favor of disclosure," and accordingly "places the burden on the

---

[144] *Id.* (citations omitted).

[145] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *overruled on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994).

[146] *Id.* (citations omitted).

[147] *Malacara v. Gerber*, 353 F.3d 393, 405 (5th Cir. 2003).

[148] *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citations omitted).

[149] *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).

[government] agency [to which a request has been made] to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document."[150]

The Fifth Circuit has held that FOIA "modif[ies]" the "traditional" summary judgment standard, insofar as it prescribes its own burdens and standards of proof to address the unique evidentiary issues inherent in FOIA actions, where the subject matter of the suit—government documents—may be partially or entirely hidden from view.[151]  Specifically, FOIA provides that federal district courts:

> [Have] jurisdiction to enjoin the agency from withholding agency records and to order the production of agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.
>
> In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B).[152]

In a FOIA action, an agency's supporting affidavits and declarations are entitled to a "presumption of legitimacy" in the absence of evidence of bad faith.[153]  Nonetheless, the burden of

---

[150] *Id.*

[151] *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010); *Cooper Cameron Corp. v. U.S. Dep't of Labor, Occupational Safety and Health Admin*, 280 F.3d 539, 543 (5th Cir. 2002) ("The FOIA context is unusual, however, because the threshold question in any FOIA suit is whether the requester can even see the documents the character of which determines whether they can be released. The requester would thus face an evidentiary Catch–22 if the statute and the case law did not make allowances. The statute expressly places the burden on the agency to sustain its action' and directs the district courts to determine the matter de novo,  giving no deference to the agency's determinations.") (citations and internal quotation marks omitted).

[152] 5 U.S.C. § 552(a)(4)(B).

[153] *Batton,* 598 F.3d at 175 (5th Cir. 2010) (citing *U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991)).

establishing the validity of a decision to withhold information remains with the agency,[154] and the Court will not accept an agency's "conclusory and generalized assertion[s]" on a motion for summary judgment, even if those assertions are uncontroverted.[155]

## B.    FOIA Procedures

### 1.    Request and Response

Several provisions of FOIA establish the procedures governing requests for records and agencies' responses to those requests. Specifically, FOIA provides that:

> On complaint, the district court of the United States in which the complainant resides, or has his principal place of business . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of agency records improperly withheld from the complainant.  In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.

> In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B).[156]

Pursuant to FOIA, agencies that receive FOIA requests are required to act upon them in the following manner:

> Each agency, upon any request for records made under Paragraph (1), (2), or (3) of this subsection, shall determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse

---

[154] *Cooper Cameron Corp. v. U.S. Dep't of Labor, Occupational Safety and Health Admin*, 280 F.3d 539, 543 (5th Cir. 2002).

[155] *Batton*, 589 F.3d at 175.

[156] 5 U.S.C. § 552(a)(3)(A).

determination.[157]

According to FOIA, agencies' 20-day response period commences:

> [O]n the date on which the request is first received by the appropriate component of the agency, but in any event not later than ten days after the request is first received by any component of the agency that is designated in the agency's regulations under this section to receive requests under this section.[158]

FOIA provides that a requester is deemed to have exhausted his administrative remedies "if the agency fails to comply with the applicable time limit provisions," unless the agency "can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request."[159]

### 2.    Exemption

FOIA provides that an agency may permissibly withhold information that falls within statutorily-defined categories, and courts construe these categories narrowly.[160] Several of these are at issue in the present case: § 522(b)(3) ("Exemption 3"); § 522(b)(6) ("Exemption 6"); and § 522(b)(7)(C) and (E) ("Exemptions 7C and 7E"). Pursuant to Exemption 3, agencies need not disclose information that is:

> [S]pecifically exempted from disclosure by statute (other than section 552b of this title), if that statute–(A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B)

---

[157] 5 U.S.C. § 552(a)(6)(A)(i).

[158] 5 U.S.C. § 552(a)(6)(A)(ii).

[159] 5 U.S.C. § 552(a)(6)(C)(I). FOIA also provides that an agency may toll the 20-day response period by (1) "mak[ing] one [reasonable] request to the requester for information," which tolls the response period "while it is awaiting such information," 5 U.S.C. § 552(a)(6)(A)(ii). 5 U.S.C. § 552(a)(6)(B)(i). "Unusual circumstances" is a statutorily-defined term. *See* § 522(a)(6)(B)(iii). Neither circumstance is at issue here.

[160] *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010) ("The exemptions to disclosure are explicitly limited by statute and should be construed narrowly.").

if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

Under Exemption 6, agencies are exempt from disclosing "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]"

Pursuant to Exemptions 7(C) and (E), agencies are not required to disclose:

> [R]ecords or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, [or] . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]

### 3.     Disclosure of Segregable Information

When an agency claims an exemption, FOIA imposes a duty upon that agency to disclose all "reasonably segregable" information and provide information about the exempt information. Specifically, FOIA provides that:

> Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection. The amount of information deleted, and the exemption under which the deletion is made, shall be indicated on the released portion of the record, unless including that indication would harm an interest protected by the exemption in this subsection under which the deletion is made. If technically feasible, the amount of the information deleted, and the exemption under which the deletion is made, shall be indicated at the place in the record where such deletion is made.[161]

### C.     *Analysis*

In his first motion, Gahagan: (1) challenges Defendant's nondisclosure of 51 pages of responsive records; (2) attacks the sufficiency of Defendant's search for records; and (3) disputes the validity of redactions and withholdings made in its August 25, 2014 disclosure. In his second

---

[161] 5 U.S.C. § 552(b).

motion, Gahagan exclusively challenges the sufficiency of the December 4, 2014 disclosures.

### 1.      Adequacy of Search

The Court first turns to the "threshold" issue of the adequacy of Defendant's search.[162] In his reply in further support of his first motion, Gahagan argues that Defendant has not carried its burden of establishing that it conducted an adequate search for responsive documents, because it has not: (1) identified who conducted the search; (2) specified the methods it used to produce the information; or (3) explained why it searched for documents in some places, but not in others.[163] In opposition, Defendant asserts that it has carried its burden of establishing that it conducted a reasonable and adequate search, since it submitted a "reasonably detailed, nonconclusory affidavit" in good faith.[164]

The Fifth Circuit instructs that "[a]n agency may demonstrate that it conducted an adequate search by showing that it used methods which can be reasonably expected to produce the information requested."[165] The proper focus in this inquiry is on the adequacy of the search, not on whether other responsive documents may exist or whether the agency searched every record system.[166] In *Batton v. Evers*, the Fifth Circuit set forth these rules and applied them, finding that two

---

[162] *Batton v. Evers*, 598 F.3d 169, 176 (5th Cir. 2010).

[163] Rec. Doc. 16 at pp. 6–10.

[164] Rec. Doc. 13 at p. 7.

[165] 598 F.3d at 176 (citations and internal quotation marks omitted). *See also Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("To meet its burden to show that no genuine issue of material fact exists, with the facts viewed in the light most favorable to the requester, the agency must demonstrate that it has conducted a "search reasonably calculated to uncover all relevant documents.").

[166] *Id. See also Weisberg*, 745 F.2d at 1485 ("[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate").

declarations "sufficiently prove[d] the adequacy and reasonableness of the IRS's search" where those declarations "list[ed] the particular databases that were searched and explain[ed] that these databases contain the type of information requested," and stated that:

> [T]he Oklahoma City disclosure office searched documents identified by the agent assigned to investigate [the Plaintiff,] as well as internal databases and systems of records to locate documents responsive to [the Plaintiff's] FOIA request. The IRS conducted the search based on the personal information provided by [the Plaintiff] in his FOIA request within the databases and systems of records available to the disclosure office.[167]

In support of its assertion that it has carried its burden, Defendant refers to the declaration of Jill Eggleston, Assistant Center Director in the FOIA / Privacy Act Unit of the USCIS National Records Center ("NRC.")[168] In that declaration, Eggleston states, in part, that:

> The NRC conducted a general search for records in the USCIS system of records referred to as the "Department of Homeland Security [USCIS] [ICE] [CBP] - 001 Alien File, Index, and National File Tracking System of Records . . . and located an A-file bearing the Plaintiff's name and A-number. in addition, on July 27, 2014, USCIS sent a memorandum to the Immigration and Customs Enforcement New Orleans office requesting a search for records responsive to the Plaintiff's request. USCIS/NRC personnel determined that the search was reasonably designed to locate any documents subject to FOIA that are in USCIS's control. All documents responsive to the Plaintiff's FOIA request would be contained within the subject A-File.

> Based upon the NRC's review of the Plaintiff's FOIA request and its familiarity with the different functions and missions of the other Directorates and program offices within USCIS, I am confident that the NRC identified all offices and searched all files that were reasonably likely to contain records responsive to the Plaintiff's FOIA request. Given the particular subject matter of the Plaintiff's FOIA request, there is no reason to presume that any of the other USCIS Directorates or program offices would likely have responsive records.[169]

---

[167] *Id.* (quoting *In re Wade*, 969 F.2d 241, 249 n.11 (7th Cir. 1992) and *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

[168] Rec. Doc. 13–1.

[169] Rec. Doc. 13–1 at pp. 4–5.

Gahagan contends that Eggleston's declaration fails to establish that Defendant's search was sufficient, since it does not identify who conducted the search, the methods used, or which files were searched.[170] In support of this proposition, Gahagan cites a number of cases from the D.C. Circuit and from district courts in the District of Columbia,[171] including *Center for Public Integrity v. F.C.C.*[172] In that case, a district court in the District of Columbia, citing D. C. Circuit authority, held that:

> [A]gency affidavits that do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable the requester to challenge the procedures utilized are insufficient to support summary judgment for the government.[173]

Despite Gahagan's assertions to the contrary, and despite Gahagan's citation of cases from the District of Columbia, which are not binding on this Court, Gahagan has not established that a reasonable fact-finder could not find for Defendant, as is required in this summary judgment motion. First, Eggleston's declaration is similar to the declarations in *Batton* in several ways. Like those declarations, Eggleston's declaration identifies where the NRC searched and states the reasons why the NRC conducted its search in the manner described, in light of the nature of Gahagan's FOIA request. Second, although Gahagan asserts that Defendant did not name the individual who

---

[170] Rec. Doc. 16 at p. 9.

[171] *See* Rec. Doc. 16 at pp. 7–8 (citing *Elliott v. U.S. Dep't of Agriculture*, 506 F.Supp.2d 1, 3 (D.D.C. 2007) ("An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" (citations omitted); *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) ("[T]he agency must demonstrate that it has conducted a 'search reasonably calculated to uncover all relevant documents.'"); *People for the American Way Foundation v. National Park Service*, 503 F.Supp.2d 284, 293 (D.D.C. 2007) ("An agency may rely upon affidavits and declarations to establish the adequacy of its search, however, the affidavits and declarations must be 'relatively detailed' and nonconclusory and . . . submitted in good faith.");

[172] *Id.* at p. 8 (citing 505 F.Supp.2d 106, 117 (D.D.C. 2007)).

[173] 505 F.Supp.2d at 117 (citations omitted).

conducted the search,  Eggleston's declaration states that she personally supervised the search.[174]

Third, although Gahagan contends that Eggleston's declaration  "simply asks this Honorable Court

to *trust her*," her declaration explains that NRC searched the "A-File" database and contacted ICE's

New Orleans office in furtherance of the search. Finally, despite Gahagan's contentions that

Defendant must explain "why the NRC was the only office searched," and must describe what (if

anything) happened at ICE's New Orleans office, he has cited no Fifth Circuit authority establishing

that agencies must explain why particular steps were *not* taken in furtherance of a search. Indeed,

the Fifth Circuit has indicated that "[t]here is no requirement that an agency search every record

system," and that "[t]he issue is not whether other documents may exist," but whether the search was

adequate.[175]

Eggleston's declaration is similar in several ways to the declarations found sufficient in

*Batton*. In light of these similarities, and in light of the Fifth Circuit's instruction that agencies are

not required to search every record system or prove that no other responsive documents exist, this

Court, construing all facts and inferences in the light most favorable to Defendant, concludes that

a reasonable fact-finder could find for Defendant. Therefore, Gahagan is not entitled to summary

judgment on this issue.

### 2.    Redaction and Withholding

Both of Gahagan's motions challenge the sufficiency of the documents produced in response

to his FOIA request.[176] In keeping with FOIA's "strong presumption in favor of disclosure,"

---

[174] Rec. Doc. 13–1 at pp. 1–2.

[175] *Batton*, 598 F.3d at 176.

[176] Rec. Doc. 10–2 at p. 23; Rec. Doc. 20–2 at pp. 19–21.

Defendant has the burden of  "justify[ing] the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document."[177] Defendant may meet its burden by "identifying the documents at issue and explaining why they fall under exemptions."[178] This Court determines *de novo* the propriety of a redaction or withholding.[179]

### a.       August 25, 2014 Disclosure

As an initial matter, the Court considers what documents relating to the August 25, 2014 disclosure are presently in dispute. In his first motion, Gahagan refers to an August 19, 2014 letter from Jill Eggleston, Defendant's Director of FOIA operations, reporting that Defendant: (1) identified 287 pages responsive to his request; (2) would release 209 pages in their entirety; (3) would release 10 pages in part; and (4) would withhold 17 pages in full.[180] Gahagan contends that he appealed Defendant's decision to withhold 17 pages of agency records.[181] He also argues that he has received no response from Defendant, although "more than 20 business days ha[ve] passed" since he filed his FOIA appeal; he deems this alleged lack of response to be a denial of his request.[182] Defendant, however, avers that it responded to Gahagan's appeal on September 12, 2014, by

---

[177] *Ray*, 502 U.S. at 173.

[178] *Batton*, 598 F.3d at 175.

[179] 5 U.S.C. § 552(a)(4)(B) ("On complaint, the district court of the United States in which the complainant resides, or has his principal place of business . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of agency records improperly withheld from the complainant.  In such a case the court shall determine the matter de novo.")

[180] Rec. Doc. 1–2 at pp. 13–14.

[181] Rec. Doc. 10–1 at p. 3.

[182] *Id.* at p. 4.

"releasing an additional 17 pages" to him, one page "in part" and 16 pages "in full."[183] In support

of this assertion, Defendant references a December 1, 2014 declaration by Jill Eggleston stating the

same.[184] Attached to Eggleston's affidavit is a table she describes as a *Vaughn* index that

"identif[ies] and describ[es] each document in which information was withheld and explain[s] how

the exemption applies to the information that was withheld."[185] That table identifies 9 documents,

amounting to 11 pages, that contain "partially withheld" information.[186]

Based on these allegations, it is unclear what documents are actually in dispute. Gahagan

does not acknowledge Defendant's alleged response to his appeal, and even if Gahagan had done

so, it is unclear whether the 17 pages allegedly produced by Defendant on September 12, 2014 are

the same 17 pages that Gahagan claims initially were (and allegedly continue to be) "withheld in

full." The table in Eggleston's declaration identifies documents numbered 4–36, 4–48, 4–49, 4–94,

4–105, 4–121, 4–122, 4–125, 4–127, 4–128, and 4–146.[187] Gahagan attached 17 fully redacted

documents to his complaint, and refers to this attachment in his briefing in support of his first

motion.[188] These documents are numbered 118, and 213–28, and are blank except for text stating

"PAGE WITHHELD PURSUANT TO [statutory exemptions]."[189] Neither Gahagan nor Defendant

---

[183] Rec. Doc. 13 at p. 6.

[184] *See* Rec. Doc. 13–1 at p. 6.

[185] *Id.* at pp. 6; 8–13.

[186] *Id.* at pp. 8–13.

[187] *Id.*

[188] Rec. Doc. 1–2 at pp. 67–84; Rec. Doc. 10–2 at p. 21.

[189] Rec. Doc. 1–2 at pp. 67–84.

explain whether Gahagan's attached documents correspond in any way to those enumerated in Defendant's table, nor whether these documents were subsequently disclosed subject to more limited redactions, and the Court is unable to determine, based on the papers before it, what relationship, if any, these documents have to each other.

The status of Gahagan's alleged responsive documents numbered 118 and 213-28 remains unknown, and Gahagan appears to deny that Defendant disclosed any documents to him on September 12, 1014. In light of these unresolved issues, the Court concludes, after construing all facts and inferences in the light most favorable to Defendant, that a reasonable fact-finder could find for Defendant.[190] Therefore, Gahagan's motion for summary judgment is denied insofar as it relates to the August 25, 2014 disclosures.

### b.      December 4, 2014 Disclosure

In his second motion, Gahagan asserts that 10 pages of documents included in the December 4, 2014 disclosure were marked as "duplicates" and fully withheld, even though FOIA does not establish an exemption for "duplicate" documents.[191] Defendant counters that ICE, a nonparty, produced the documents, and that ICE only fully withheld "documents that were duplicates of documents already processed and released," making further efforts to redact and release these duplicate documents a "complete waste of time."[192] Further, Defendant contends, "the Court still has

---

[190] *See Mavadia v. Caplinger*, No. 95-3542, 1996 WL 592742 (E.D. La. Oct. 11, 1996) (noting that summary judgment is not proper where there is "contradictory evidence" related to FOIA claims) (citing *Gallant v. N.L.R.B.*, 26 F.3d 168, 171 (D.C. Cir. 1994) ("Summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.").

[191] Rec. Doc. 21–1 at p. 4.

[192] Rec. Doc. 23 at pp. 5–6.

sufficient information to analyze the remaining withholdings, as the remaining redactions are exceedingly minimal and very straightforward."[193]

### i.      Withholding of "Duplicate" Documents

The parties dispute whether ICE properly withheld 10 pages of documents that are alleged "duplicates" of documents already disclosed. The Fifth Circuit has held that FOIA's disclosure exemptions are "explicitly limited by statute and should be construed narrowly,"[194]  and that Defendant bears the burden of establishing *de novo* the validity of an exemption.[195] Gahagan contends that FOIA does not recognize an exemption for "duplicate" documents.[196] The Court has not found any language in FOIA capable of supporting an exemption on the basis that a document is a "duplicate" of another, and even if any such language existed, Defendant has not furnished the Court with any information that permits it to determine *de novo* whether the documents actually are duplicates of documents already disclosed. Therefore, a reasonable fact-finder could not find that Defendant has carried its burden of establishing that the 10 pages of "duplicate" documents were lawfully withheld.

### ii.      Responsibility for the Withholding

Defendant asserts that Gahagan incorrectly seeks relief from this Court based on the actions of ICE, a  non-party to the instant lawsuit. Gahagan argues that "even though an agency referred documents to other agencies for review and processing, the agency is still responsible for explaining

---

[193] *Id.* at p. 7.

[194] *Batton*, 598 F.3d at 175 (citations omitted).

[195] *Id.*

[196] Rec. Doc. 21–2 at p. 7.

their nonproduction."[197]

Neither party cites any binding authority regarding whether Defendant or ICE should be held accountable for withholding the 10 "duplicate" pages, and the Court has found none. Gahagan, however, cites several decisions from the United States Court of Appeals for the District of Columbia Circuit and from district courts in support of his assertion that Defendant, and not ICE, is responsible for justifying the withheld information.[198]

The lead case cited by Gahagan is *McGehee v. C.I.A.*, from the D.C. Circuit.[199] In *McGehee*, the plaintiff filed a FOIA request with the Central Intelligence Agency ("CIA"), whereupon the CIA determined that certain responsive documents originated with other agencies.[200] The CIA "declined to undertake any kind of substantive review" of those "other agency" documents, and "instead sent them to the agencies that first compiled them" so that those agencies could determine "whether any material was exempt from disclosure."[201] The plaintiff did not file a FOIA request with these agencies, and instead "insist[ed] that the CIA is required by [FOIA] to evaluate and release the documents in question."[202] The District Court, in turn, "dismiss[ed] from the lawsuit" these "other agency" documents, and the plaintiff appealed.[203]

---

[197] Rec. Doc. 21–2 at p. 18 (citations and internal punctuation omitted).

[198] *See* Rec. Doc. 26 at p. 2.

[199] 697 F.2d 1095 (D.C. Cir. 1978).

[200] *Id.* at 1099–1100.

[201] *Id.* at 1100

[202] *Id.*

[203] *Id.*

In addressing the plaintiff's arguments, the D.C. Circuit considered the scope of FOIA's grant of federal jurisdiction "to enjoin the agency [that received the request] from withholding [1] agency records and to order the production of any agency records [2] improperly [3] withheld from the complainant."[204] The CIA first asserted that "[r]ecords that are in possession of the agency to which a FOIA request is submitted but that were originally compiled by another agency . . . are not 'agency records' within the meaning of the Act."[205] Finding no support for this assertion from the terms of the statute, the legislative history, or judicial precedent, the D.C. Circuit concluded that in light of FOIA's "central purpose," the term "agency records" includes "all records in an agency's possession, whether created by the agency itself or by other bodies covered by the act."[206]

The court then addressed what constitutes "withholding" in the context of referral procedures. In its analysis, the court reasoned that although "categorical refusal to release documents that are in the agency's custody or control for any reason other than those set forth in the Act's enumerated exemptions would constitute 'withholding[,]'" problems of interpretation may arise "in the context of processing or referral procedures that are likely to result eventually, but not immediately, in the release of documents."[207] In this context, the court held, "a system adopted by an agency for dealing with documents of a particular kind constitutes 'withholding' of those documents if its net effect is significantly to impair the requester's ability to obtain the records or

---

[204] *Id.* at 1106 (citing *Kissinger v. Reporters Committee for Freedom of the Pres*, 445 U.S. 106, 150 (1980) (construing 5 U.S.C. 552(a)(4)(B)).

[205] 697 F.2d at 1106.

[206] *Id.* at 1109.

[207] *Id.* at 1110.

significantly to increase the amount of time he must wait to obtain them."[208]

Next, the Court concluded that a "withholding" satisfying its definition would be "improper unless the agency can offer a reasonable explanation for its procedure," such as "a showing that the procedure significantly improves the quality of the process whereby the government determines whether all or portions of responsive documents are exempt from disclosure."[209] Nonetheless, the court held, "the more serious the resultant impediments to obtaining records or the longer the resultant delay in their release, the more substantial must be the offseting gains offered by the agency to establish the reasonableness of the system."[210]

Finally, considering the facts before it, the D.C. Circuit concluded that the record contained insufficient evidence to determine how the case should be disposed under the framework it set forth, and therefore ordered the district court upon remand to permit the parties to adduce evidence on the issue.[211]

In *Sussman v. U.S. Marshals Service*, the D.C. Circuit, construing *McGehee*, held that although an agency may "acquit itself" of its "duty" to act on requests by referring responsive documents to another agency, such a referral is only appropriate where it "does not lead to improper withholding" within the meaning of *McGehee*.[212] Other decisions from the D.C. Circuit and from district courts in the District of Columbia, cited by Gahagan, illustrate that courts within the D.C.

---

[208] *Id.*

[209] *Id.*

[210] *Id.*

[211] *Id.* at 1111-12.

[212] 495 F.3d 1106, 1118 (D.C. Cir. 2008).

Circuit continue to hold that agencies are directly responsible for FOIA requests, even where responsive documents in their possession were created by other agencies, and may only permissibly make referrals that do not result in improper withholding.[213] Other United States Courts of Appeals have reached the same conclusion as the D.C. Circuit.[214]

Defendant argues that "seeking action or an order against ICE," a nonparty, "is inappropriate."[215] To address this argument, the Court must first resolve the logically antecedent question of whether ICE or Defendant is responsible for responding to Gahagan's FOIA request. No Fifth Circuit authority appears to resolve the question of whether Defendant may transfer its responsibility to respond to ICE, such that Defendant no longer has the burden of establishing the validity of claimed exemptions. Moreover, FOIA itself is silent on the question of whether an agency may fully discharge its duty to respond by making a referral, irrespective of the outcome of that referral. Indeed, FOIA only addresses requestees' contact with other components or agencies insofar

---

[213] Rec. Doc. 21–2 at p. 13 (citing *Williams v. F.B.I.*, No. 92-5176 1993 WL 157679 (D.C. Cir. 1993) (per curiam) (citing *McGehee* and ordering agency that received FOIA request to explain why a document referred to another agency was withheld); *Paisley v. CIA*, 712 F.2d 686, 691 (D.C. Cir. 1983) ("A District Court with jurisdiction of the agency possessing the disputed documents will therefore have jurisdiction to resolve the status of those documents, no matter what their origin") *vacated in part*, 724 F.2d 201 (D.C. Cir. 1984); *Greenberg v. U.S. Dep't of Treasury*, 10 F.Supp.2d 3, 19 (D.D.C. 1998) (citing *McGehee, Paisley,* and *Williams* and concluding that "even though Customs referred . . . documents to other agencies for review and processing, Customs is still responsible for explaining their non-production."); *Electronic Privacy Info. Center v. Nat'l Sec. Agency*, 795 F.Supp.2d 85, 93–94 (D.D.C. 2011) ("[T]he NSA's referral of the FOIA request to the NSC does not relieve the NSA of its continuing obligation to respond to the request.. An agency may only properly refer a FOIA request to another agency when doing so does not constitute an improper withholding of agency records.")).

[214] *See, e.g. Matter of Wade*, 969 F.2d 241, 248 (7th Cir. 1992). ("Once a FOIA request has been made to an agency, that agency's referral to a different agency regarding disclosure does not divest the original agency of responsibility to respond to the FOIA request.")

[215] Rec. Doc. 23 at p. 5.

as that contact may justify extending the time limit to respond to a request.[216]

The *McGehee* court concluded that referrals may appropriately be made in some circumstances, but also held that requestee agencies remained responsible for documents improperly withheld as a result of referral. The plain language of FOIA supports this conclusion. In providing, at § 552(3)(A), that "each agency, upon any request for records . . . shall make the records promptly available to any person,"  FOIA imposes a duty upon the agency that receives the request, not upon a third-party agency that receives the request upon referral. Although referral is not forbidden by FOIA, no provision of the statute establishes that an agency may avoid responsibility for improper withholding by referring documents elsewhere.[217]

Gahagan asserts that Defendant's referral resulted in an "improper withholding." Pursuant to FOIA, agencies must respond to FOIA requests within 20 days, in the absence of "unusual circumstances" warranting an extension[218] It is undisputed that Gahagan has never received the "duplicate" documents, and Jill Eggleston's affidavit, submitted by the Government, states that Defendant received Gahagan's FOIA request on July 22, 2014,[219] which is far more than 20 days

---

[216] *See* 5 U.S.C. § 552(a)(6)(B)(iii)(III) (stating that "unusual circumstances" justifying an extension of up to ten working days may include "the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein.").

[217] DHS's FOIA regulations are consistent with this conclusion, establishing that an agency receiving a FOIA request may "determine[] that it is not best able to process the record," shall either (1) respond to the request after "consulting with the component or agency best able to determine whether to disclose" the requested documents and with "any other component or agency that has a substantial interest in it," or (2) "refer the responsibility for responding to the request . . . to the component best able to determine whether to disclose it, or to another agency that originated the record," with "[a]ll consultations and referrals . . . handled according to the date the FOIA request initially was received by the first component or agency. *See* 5 C.F.R. § 5.4. These regulations do not support the conclusion that agencies or components that refer FOIA requests are excused from responsibility for improperly withheld documents.

[218] *See* 5 U.S.C. § 552(a)(6)(A)(ii).

[219] *See* Rec. Doc. 10–1 at p. 2.

44

ago. In *McGehee*, the D.C. Circuit held that a referral constitutes an "improper withholding" if "its net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them," and if the agency cannot offer a "reasonable explanation" for its procedure, such that the beneficial effects of the referral outweigh the impediments to disclosure it creates.[220] Although Defendant contends that: (1) Gahagan's request was "properly responded to by USCIS and ICE;" (2) "[t]he only pages 'withheld' in full were documents that were duplicates of documents already processed and released;" and (3) that "[r]equiring an agency to waste the time to redact a duplicate document is simply impractical and a complete waste of time,"[221] the Court is obligated to determine the validity of a withholding *de novo* and cannot rely on Defendant's bare assertions about the contents of the "duplicate" documents. More importantly, as noted above, the Court has found no authority establishing that a document may be withheld because it is a "duplicate" of others already disclosed.

The D.C. Circuit's *McGehee* decision is not binding on this Court, but no Fifth Circuit authority addresses the issue *McGehee* addresses, and this Court finds *McGehee*'s analysis persuasive. Applying the test set forth in that decision, it is undisputed that Gahagan has been unable to obtain the "duplicate" documents despite months of waiting and, now, litigation. Therefore, the net effect of the referral at issue here is "significantly to impair" Gahagan's ability to obtain the records and "significantly to increase the amount of time he must wait to obtain them,"[222] rendering the referral a "withholding" under *McGehee*. Applying the next step of the *McGehee* analysis,

---

[220] *Id.*

[221] Rec. Doc. 23 at pp. 5–6.

[222] *McGehee*, 697 F.3d at 1110.

Defendant has offered no facts or argument that reasonably explains its procedure, particularly in light of the impediments to disclosure that the procedure has created here. Therefore, the 10 pages of "duplicate" documents have been improperly withheld, and the responsibility to account for them rests with Defendant, not ICE. As such, pursuant to *McGehee*, no reasonable fact-finder could find for Defendant regarding the question of whether its "referral" resulted in an improper withholding. Defendant may therefore properly be held responsible for the failure to produce the "duplicate" documents.[223]

### c. Summary Judgment

As to the August 25, 2014 disclosure, the Court is unable to determine what documents are still in dispute. Gahagan's motion for summary judgment as to this disclosure will therefore be denied.

With respect to the 10 documents marked as "duplicate" and omitted from the December 4, 2014 disclosure, however, the Court follows the Fifth Circuit's instruction that exemptions to disclosure under FOIA are "explicitly limited by statute and should be construed narrowly."[224]

---

[223] In his first motion, Gahagan asserts that "it is unlawful under the plain meaning of FOIA to refer responsive agency records to another agency," such as occurred in the present case when Defendant referred 51 pages of documents to ICE. Rec. Doc.10–2 at pp. 7–11. Gahagan also argues that the "referral" practice at issue here "would disallow [him] the legal ability to enforce his rights under FOIA," since agencies could avoid responsibility for responding to FOIA requests by referring requests to other agencies, who could, in turn, avoid responsibility for responding by "referring" the requests a third time. Rec. Doc. 10–2 at pp. 10–11. Since filing his first motion, both Gahagan and Defendant have acknowledged that Gahagan received 51 pages of documents directly from ICE. Rec. Doc. 21–1 at p. 4; Rec. Doc. 20 at pp. 1–2. Defendant argues that this disclosure renders Gahagan's arguments on this point moot. Rec. Doc. 20 at pp. 1–2. The Fifth Circuit has held that an agency's production of requested records renders a plaintiff's FOIA claim moot. *Ayanbadejo v. Chertoff*, 517 F.3d 273, 278 (5th Cir. 2008). Therefore, to the extent that Gahagan's arguments in his first motion are premised upon the use of referral as a means to avoid producing responsive documents altogether (as Gahagan had asserted before ICE's December 4, 2014 disclosure) the December 4, 2014 disclosure renders his motion moot. To the extent, however, that Gahagan's arguments are premised upon the use of referral as a way to avoid responsibility for alleged "improper withholdings," ICE's December 4, 2014 disclosure does not moot Gahagan's arguments on this point.

[224] *Batton*, 598 F.3d at 175.

46

Defendant has  not pointed to any statute that authorizes an agency to withhold a document because it is a "duplicate." Therefore, no reasonable fact-finder could find for Defendant regarding whether its withholding was appropriate.[225] Pursuant to FOIA, and in keeping with FOIA's "strong presumption in favor of disclosure,"[226] this Court may "order the production of agency records improperly withheld from the complainant."[227] Since it is undisputed that these 10 pages have been withheld from Gahagan, and since Defendant has offered no evidence or argument establishing that this withholding was appropriate, Gahagan is entitled to summary judgment as to these documents. The Court will therefore order Defendant to produce the 10 pages to Gahagan, after making any statutorily authorized redactions.

### 3.    Segregability

In both of his motions, Gahagan asserts that Defendant "has not proven . . . that it is unable to reasonably segregate [exempt] portions of the record [from nonexempt portions]."[228] Defendant  contends, as to the first motion, that it "testified that it could not segregate any portion of the documents withheld in full,"[229] thereby carrying its burden. As to the second motion, Defendant argues that the documents disclosed on December 4, 2014 are either duplicates of documents already produced, or are subject only to "minimal" and "straightforward" redactions.[230]

---

[225] *Ray*, 502 U.S. at 173 (holding that an agency carries the burden of "justify[ing] the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document").

[226] *Batton*, 598 F.3d at 175.

[227] 5 U.S.C. § 552(a)(4)(B).

[228] Rec. Doc. 10–2 at p. 23; Rec. Doc. 21–2 at pp. 19–21.

[229] Rec. Doc. 13 at pp. 11–12.

[230] Rec. Doc. 23 at p. 6.

Pursuant to § 522(b), a FOIA requester is entitled to "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt under this subsection." Further, "[t]he amount of information deleted, and the exemption under which the deletion is made, shall be indicated on the released portion of the record, unless including that indication would harm an interest protected by the exemption in this subsection under which the deletion is made."[231] Finally, where "technically feasible," the responding agency should "indicate[] the information deleted, and the exemption under which the deletion is made . . . at the place in the record where such deletion was made."[232]

### a.    August 25, 2014 Disclosure

In his first motion, Gahagan asserts that the Government has failed to establish that it has "met its burden of proving that no segregable, nonexempt portions remain withheld, with regard to the 17 enumerated fully redacted pages of information."[233] Defendant counters that Jill Eggleston's affidavit establishes that it could not reasonably segregate any portion of the documents withheld in full, thereby carrying its burden on this point.[234] As noted above, however, the parties' briefing related to the August 25, 2014 disclosure does not permit the Court to identify what documents are still actually disputed. Therefore, the Court is presently unable to determine whether Defendant failed to reasonably segregate nonexempt portions of these documents, and Gahagan's first motion will be denied to the extent that it seeks relief based upon Defendant's alleged failure to segregate

---

[231] 5 U.S.C. § 522(b).

[232] Id.

[233] Id.

[234] Rec. Doc. 13 at pp. 12–13.

48

nonexempt information from these documents.

### b.    December 4, 2014 Disclosure

Gahagan asserts that Defendant has failed to meet its burden of establishing that "no segregable, nonexempt portions remain withheld" with regard to the 10 "duplicate" pages and the other withholdings made in the December 4, 2014 disclosure.[235] Defendant, in opposition, counters that "the Court still has sufficient information to analyze the remaining withholdings as the remaining redactions are exceedingly minimal and very straightforward."[236] The Court has already determined that the 10 "duplicate" pages have been improperly withheld from Gahagan. It therefore now considers whether Gahagan is entitled to summary judgment as to the other documents included in the December 4, 2014 disclosure.

Attached to Gahagan's second motion are, among other things, 51 pages of material containing what appear to be records containing partial redactions.[237]  These redactions are confined within text boxes, with the statutory justification for the redaction typewritten in each text box. For example, a "Notice of Rights and Request for Disposition" form[238] contains five redactions: one next to Amador's name, listing what appear to be three claimed exemptions;[239] another next to text stating "Event No." and listing two exemptions;[240] a third covering an area stating "Notice Read to Subject

---

[235] Rec. Doc. 21–2 at p. 22.

[236] Rec. Doc. 23 at p. 6.

[237] Rec. Doc. 21–3 at pp. 2–51.

[238] Rec. Doc. 21–3 at p. 15.

[239] *Id.*.

[240] *Id.*

by," listing what appear to be three exemptions;[241] a fourth above an area labeled "Name of Officer (Print)," listing what appear to be three exemptions;[242] and a fifth above an area labeled "Signature of Officer," listing three exceptions.[243]

Consistent with § 522(b) of FOIA, the partially-redacted documents contain limited redactions, indicate the redacted information "on the released portion of the record" where the redaction was made, specify the exemption allegedly justifying the redaction, and indicate the redacted information at the places where redactions were made. Gahagan does not assert that these redactions failed to indicate "[t]he amount of information deleted, and the exemption under which the deletion is made . . . on the released portion of the record." Rather, he asserts only that Defendant "has not proven that it has fully discharged its obligations under FOIA by proving that it is unable to reasonably segregate portions of the record."[244] This argument addresses Defendant's justifications for its withholdings. The Court therefore turns now to the sufficiency of those justificaitons.

### 4.      Justification of Withholdings

Gahagan asserts Defendant has "not produced a *Vaughn* index for its December 4, 2014 disclosure," and therefore has not fulfilled its obligations under FOIA.[245] Gahagan also urges this Court to compel Defendant to produce the 51 pages of partially redacted documents disclosed on

---

[241] *Id.*

[242] *Id.*

[243] *Id.*

[244] Rec. Doc. 21–2 at p. 21.

[245] Rec. Doc. 21-2 at p. 22.

December 4, 2014 for *in camera* review.[246] In opposition, Defendant asserts that it has provided the Court with "sufficient information to analyze" the withholdings, and that "the ostensible redactions require little analysis."[247]

      **a.**    ***Vaughn* Index**

A *Vaughn* index is "a routine device through which the defendant agency describes the responsive documents withheld or redacted and indicates why the exemptions claimed apply to the withheld material."[248] In *Stephenson v. I.R.S.*, the Fifth Circuit instructed that a *Vaughn* index consists of a "index and detailed justification for their claim [of exemption]."[249] Although the decision to order a *Vaughn* index is within the discretion of the Court,[250] the Fifth Circuit instructs that "in instances where it is determined that records do exist," a district court "must do something more" than "rely solely upon an affidavit" to "assure itself of the factual basis and bona fides of the agency's claim of exemption."[251] A district court abuses its discretion when it refuses to order a *Vaughn* index "or similar procedure" when it "relies upon agency affidavit in an investigative context when alternative procedures . . . would more fully provide an accurate basis for decision."[252]

The Fifth Circuit has noted that district courts may, in their discretion, use a variety of

---

[246] *Id.*

[247] Rec. Doc. 34 at pp. 5–6.

[248] *Batton*, 598 F.3d at 174 (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); *Jones v. F.B.I.*, 41 F.3d 238, 241 (6th Cir. 1994)).

[249] 629 F.2d 1140, 1145 (5th Cir. 1980).

[250] *Id.*

[251] *Id.; accord Batton*, 598 F.3d at 178.

[252] *Batton*, 598 F.3d at 178.

procedures in place of a *Vaughn* index to determine whether an agency has properly withheld responsive information, including requesting "detailed justifications where indexing alone would be inappropriate," conducting "random sample inspection of documents listed and described in an affidavit," and reviewing documents *in camera*.[253]

In *Batton v. Evers*, cited by Gahagan, the defendant agency identified 5,318 responsive documents, and subsequently disclosed 1,202 of those documents to the plaintiff.[254] The agency then moved for summary judgment, invoking FOIA Exemptions 3, 5, 6, 7(A), 7(C) in support of its decision to withhold the remaining information.[255] The plaintiff, in turn, moved to compel the production of a *Vaughn* index.[256] The district court denied the plaintiff's motion, and granted summary judgment to the agency,[257] and the Fifth Circuit reversed, concluding that it was not possible to determine from the "broad" and "conclusory" statements in its summary judgment declarations whether the agency properly withheld information.[258] The court further held that although the agency's affidavits are accorded "a presumption of legitimacy" in the absence of evidence of bad faith, the agency cannot rely on "conclusory 'say so' to prove the applicability of an exemption."[259]

---

[253] *Stephenson*, 629 F.2d at 1145.

[254] *Id.* at 174.

[255] *Id.* at 177–84.

[256] *Id.*

[257] *Id.*

[258] *Id.* at 177-84.

[259] *Id.* at 179.

As noted above, Gahagan has attached to his second motion 51 pages of documents,[260] along with an unsworn letter from ICE (dated December 4, 2014) describing "Privacy Act Exemption (k)(2)" and FOIA Exemptions 6, 7(C), and 7(E).[261] Additionally, included among the documents are ten pages left blank except for the typewritten word "Duplicate" in the top left corner.[262] The Court has already concluded that the 10 "duplicate" documents were improperly withheld without statutory justification. The other redactions in Exhibit 10, however, are limited to discrete areas of documents and contain citations to statutory authority.

Gahagan does not specifically assert that any of these redactions are themselves inappropriate or unjustified. Rather, he asserts that Defendant is required to produce a *Vaughn* index to justify them.[263] On this point, Gahagan is incorrect. In both *Batton* and *Stephenson*, the Fifth Circuit held that district courts *may* order *Vaughn* indexes or conduct more searching review in their discretion, and that district courts abuse their discretion when they fail to inquire beyond an affidavit in situations where other methods would yield a more accurate basis for decision.[264]

In *Batton*, the Fifth Circuit reviewed each claimed exemption and found, among other things, that it was "impossible to tell[,]" based on the materials in the record, "whether all of the

---

[260]

[261] *Id.* at pp. 54–57.

[262] *See Id.* at pp. 19; 26-28; 36–38; 50–52.

[263] *See* Rec. Doc. 21–2 at p. 22 ("[T]he [G]overnment has not produced the mandated *Vaughn* index as expressly required by FOIA.").

[264] *See Stephenson*, 629 F.2d at 1143–45 ("[I]n instances where it is determined that records do exist, the District Court must do something more to assure itself of the factual basis and bona fides of the agency's claim of exemption than rely solely upon an affidavit."); *Batton*, 598 F.3d at 174 (same).

information" was properly withheld.[265] In the present case, insofar as the partially redacted pages disclosed on December 4, 2014 are concerned, the Court does not face the same daunting problems of interpretation present in *Batton* or *Stephenson*, where entire documents were withheld. Nonetheless, although the redactions made here are done line-by-line, and are accompanied by an unsworn letter containing the FOIA officer's brief and generalized analysis regarding the applicable exemptions,[266] the Court is unable to determine whether each redaction is appropriate based upon the information before it.

Gahagan requests a *Vaughn* index,[267] which consists of an "index and detailed justification[s]" for the claimed exemptions.[268] Although here, unlike in *Batton* or *Stephenson*, the claimed exemptions are readily identifiable on the face of the documents disclosed, there are many redactions, and an index will permit a more systematic review of the claimed exemptions. Further, the only support presently offered for the claimed exemptions consists of four paragraphs of an unsworn letter sent by an ICE FOIA officer to Gahagan.[269] This unsworn letter does not explain why any specific item of redacted information is exempt.[270] As a result, the record contains only "conclusory and generalized" assertions regarding the claimed exemptions; such assertions are not

---

[265] 598 F.3d at 179.

[266] Rec. Doc. 21–3 at pp. 54–56.

[267] Rec. Doc. 21–2 at p. 22.

[268] *Stephenson*, 629 F.2d at 1145.

[269] Rec. Doc. 21–3 at p. 56.

[270] *Id.*

54

a valid basis for decision.[271] Therefore, the Court presently lacks information enabling it to make the requisite *de novo* findings as to these withholdings.

As *Stephenson* and *Batton* illustrate, some kind of showing (an affidavit in some cases, and more in others, as is necessary to provide an accurate basis for decision) is required to establish the validity of a claimed exemption. Since this Court currently lacks a sufficient or accurate basis for decision, it will grant Gahagan's request for a *Vaughn* index, both as to the documents already disclosed to Gahagan on December 4, 2014, and as to the 10 "duplicate" pages it will order Defendant to produce, subject to any statutorily authorized redactions.

### b.    *In Camera* Review

Having determined that Defendant must produce the 10 pages of "duplicate" documents to Gahagan, subject to any statutorily authorized redactions, and having concluded that Defendant must provide the Court with detailed justifications regarding the partial redactions contained in its December 4, 2014 disclosure, the Court concludes that *in camera* review, which it may order in its discretion, is unnecessary at this time.[272]

### IV. Conclusion

In his first motion, Gahagan makes several requests of the Court. First, Gahagan urges this Court to grant him summary judgment and order Defendant to "release the segregable, nonexempt portions of the 17 pages of responsive agency records" allegedly withheld from disclosure on August 25, 2014.[273] Due to the fundamental inconsistencies in the parties' briefing, it is impossible

---

[271] *Cooper Cameron*, 280 F.3d at 543.

[272] *Stephenson*, 629 F.2d at 1145.

[273] Rec. Doc. 10–2 at pp. 23–24.

55

to determine what documents are actually in dispute at this time. Accordingly, Gahagan has not shown that he is entitled to summary judgment as to the documents disclosed on August 25, 2014. Therefore, the Court will deny Gahagan's first motion insofar as it urges the Court to order Defendant to produce documents or segregable portions of documents allegedly not produced as part of the August 25, 2014 disclosures.

Second, Gahagan argues that he is entitled to summary judgment because Defendant has not shown that it conducted an adequate search in response to his FOIA request.[274] Since Defendant submitted a declaration describing its search that contains content that is similar to the content in declarations found sufficient in the Fifth Circuit's *Batton* decision, the Court will deny Gahagan's first motion to the extent that it seeks summary judgment based upon the alleged inadequacy of Defendant's search.

Third, Gahagan seeks summary judgment based upon the allegedly unlawful nature of Defendant's decision to refer documents to ICE for review.[275] To the extent that Gahagan seeks relief premised upon ICE's alleged failure to produce the referred documents, his motion is moot, since it is undisputed that ICE produced the referred documents after making redactions. Although ICE's disclosure was deficient, for reasons addressed in Gahagan's second motion, Gahagan's first motion is premised upon ICE's failure to respond. Therefore, the Court will deny his first motion as moot to the extent that it is premised upon ICE's failure to respond to his FOIA request. To the extent, however, that Gahagan asserts that the referral at issue here led to an improper withholding of responsive documents, the Court will grant Gahagan's motion, since 10 pages of the "referred"

---

[274] Rec. Doc. 16 at pp. 7–10.

[275] Rec. Doc. 10–2 at pp. 7–11.

56

documents disclosed to Gahagan on December 4, 2014 were improperly withheld as "duplicates."

In his second motion, Gahagan makes several additional requests of the Court. First, Gahagan urges the Court to grant him summary judgment on the basis that Defendant improperly withheld 10 pages of responsive agency records from the December 4, 2014 disclosure, on the basis that these documents are "duplicates" of others already disclosed.[276] Since the "duplicate" nature of a document is not a statutorily authorized basis for withholding, and since FOIA requires that all documents be disclosed unless those documents are statutorily exempt form disclosure, the Court will grant summary judgment to Gahagan as to these 10 documents. Since Defendant improperly withheld these documents, both the plain text of FOIA and decisions interpreting it support the conclusion that Defendant is properly held responsible for the disclosure of these documents. On this basis, the Court will order Defendant to produce, in a manner consistent with the applicable law, the 10 "duplicate" pages, with any exempt information redacted.

Second, Gahagan urges the Court to order Defendant to produce a *Vaughn* index of the documents disclosed on December 4, 2014. Since Defendant has not provided a declaration or affidavit justifying its redactions, and since the Fifth Circuit's *Stevenson* and *Batton* decisions instruct that the Court should seek the most reliable information available before it determines whether redactions are appropriate, the Court will grant Gahagan's motion to the extent that it requests the Court to order Defendant to produce a *Vaughn* index covering all of the documents in its December 4, 2014 disclosures, including the 10 documents it is ordered to produce.

Third, Gahagan urges the Court to order *in camera* review of the documents disclosed on December 4, 2014. Since *in camera* review is within the discretion of the Court, and since the Court

---

[276] Rec. Doc. 21–2 at pp. 11–19.

has not yet even received a *Vaughn* index detailing the redactions, the Court will deny Gahagan's motion to the extent that it seeks *in camera* review of the documents before a *Vaughn* index has been produced. Accordingly,

**IT IS ORDERED** that Gahagan's "Motion for Summary Judgment"[277] is **DENIED IN PART, DENIED AS MOOT IN PART, AND GRANTED IN PART.**

**IT IS FURTHER ORDERED** that Gahagan's "Motion for Summary Judgment"[278] is **DENIED** insofar as it urges the Court to order Defendant to produce documents or segregable portions of documents allegedly not produced as part of the August 25, 2014 disclosures, and to the extent that it seeks summary judgment based upon the alleged inadequacy of Defendant's search.

**IT IS FURTHER ORDERED** that Gahagan's "Motion for Summary Judgment"[279] is **DENIED AS MOOT** to the extent that it is premised upon a lack of response his referred FOIA request.

**IT IS FURTHER ORDERED** that Gahagan's "Motion for Summary Judgment"[280] is **GRANTED** to the extent that it argues Defendant's referral led to an "improper withholding" of responsive documents, since 10 pages of the "referred" documents disclosed to Gahagan on December 4, 2014 were improperly withheld as "duplicates."

**IT IS FURTHER ORDERED** that Gahagan's "Second Motion for Summary Judgment"[281]

---

[277] Rec. Doc. 10.

[278] *Id.*

[279] *Id.*

[280] *Id.*

[281] Rec. Doc. 21.

is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that Gahagan's "Second Motion for Summary Judgment"[282] is **GRANTED** insofar as it seeks production of the 10 pages that were fully redacted and marked as "duplicate" in the December 4, 2014 disclosure. Defendant is hereby ordered to produce these documents to Gahagan, subject to any statutorily authorized redactions, within 20 days.

**IT IS FURTHER ORDERED** that Gahagan's "Second Motion for Summary Judgment"[283] is **GRANTED** to the extent that it seeks a *Vaughn* index. Defendant is hereby ordered to produce a *Vaughn* index covering all of the documents in its December 4, 2014 disclosures, including the 10 pages the Court has ordered it to produce, within 20 days.

**IT IS FURTHER ORDERED** that Gahagan's "Second Motion for Summary Judgment"[284] is **DENIED** to the extent that Gahagan seeks *in camera* review of the December 4, 2014 documents.

**NEW ORLEANS, LOUISIANA**, this 23rd day of January, 2015.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[282] *Id.*

[283] *Id.*

[284] *Id.*