## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL GAHAGAN** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 14-2233** |
| **UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES** | **SECTION: "G" (1)** |

## ORDER

In this action arising under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), Plaintiff Michael W. Gahagan ("Gahagan") sought relief in connection with his request for agency records he claims that Defendant United States Citizenship and Immigration Services ("USCIS" or "Defendant") unlawfully withheld.[1] Pending before the Court is Gahagan's "Motion for Attorney's Fees and Costs Pursuant to the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E)."[2] Having reviewed the motion, the memoranda in support, the memorandum in opposition, the record, and the applicable law, the Court will grant the motion and award Gahagan $13,138.87, representing $12,676 for attorney's fees and $462.87 for litigation costs.

## I. Background

### A.    *Factual Background*

In his complaint, Gahagan, an immigration attorney, alleges that he requested a copy of agency records so that he could effectively represent his client, Miztle Amador–Castillo ("Amador") in a removal hearing scheduled for October 8, 2014 at the Oakdale, Louisiana Immigration Court, where Amador was being detained pending the outcome of the removal hearing.[3] Gahagan contends

---

[1] Rec. Doc. 1 at p. 1.

[2] Rec. Doc. 49.

[3] Rec. Doc. 1 at p. 1.

that he requested a copy of Amador's immigration file from the Oakdale, Louisiana Office of the Chief Counsel of United States Immigration and Customs Enforcement ("ICE") on June 6, 2014, pursuant to the Mandatory Access Law, 8 U.S.C. § 1229a(c)(2)(B) and INA § 240(c)(2)(B), in order to access information he required to properly defend Amador at his removal proceedings.[4] Gahagan asserts that although he clearly indicated his right to the materials under the Mandatory Access Law, ICE refused to follow that law, and produced none of the information Gahagan requested.[5]

Gahagan contends that on July 24, 2014, he filed a FOIA request with Defendant, seeking Amador's Alien File ("A-File") and other information.[6] Gahagan asserts that on the following day, July 25, 2014, he filed a "Motion to Compel ICE Office of the Chief Counsel to Produce Respondent's Alien File Pursuant to INA § 240(c)(2)(B)" in the Oakdale Immigration Court.[7] This motion, according to Gahagan, was denied, on the basis that FOIA "is the only method that Plaintiff can use to obtain his client's A-File."[8] Gahagan asserts that Defendant acknowledged receipt of his FOIA request on July 27, 2014,[9] and, in turn, sent him "a portion of the requested information," which he received on August 25, 2014.[10]

Gahagan argues that "[f]ifty-one (51) pages of the information disclosed were unlawfully withheld from [him], and marked only with 'Referred to Immigration and Customs Enforcement'

---

[4] *Id.* at p. 5.

[5] *Id.*

[6] *Id.* at pp. 5–6.

[7] *Id.* at p. 6.

[8] *Id.*

[9] *Id.* Gahagan also argues that "the government erroneous [sic] claims that the FOIA request was filed on July 27, 2014" even though he "properly filed" his request on July 24, 2014. *Id.*

[10] *Id.*

in violation of FOIA."[11] Also, Gahagan argues, "seventeen (17) pages of information disclosed were unlawfully fully redacted in violation of FOIA without the segregable portions of the information being disclosed."[12] Finally, Gahagan asserts, "the lawfully required *Vaughn* index fully describing the search methods employed and individually describing the lawful basis for each exemption on each page of information was not produced to [him] as mandated by FOIA."[13]

Gahagan asserts that he filed an appeal of Defendant's disclosure on August 28, 2014, "on the basis that information had been unlawfully withheld by the government," and also premised upon the argument that "a legally adequate search had not been conducted for the requested information as mandated by FOIA."[14] Gahagan avers that although more than 20 business days had elapsed since he filed his FOIA appeal, he received "no substantive reply," a result he deemed a "denial of his FOIA request pursuant to 5 U.S.C. § 552(a)(6)(A)(ii)."[15] Gahagan asserts that he exhausted his administrative remedies in connection with his FOIA requests, making a lawsuit his only available remedy.[16] In his complaint, Gahagan sought attorney's fees pursuant to the Equal Access to Justice Act[17] and FOIA,[18] as well as declaratory and injunctive relief finding that Defendant "exceeded the legal FOIA response time of twenty days," and ordering Defendant "to

---

[11] *Id.*

[12] *Id.* at pp. 6–7.

[13] *Id.* at p. 7.

[14] *Id.*

[15] *Id.*

[16] *Id.* at p. 8.

[17] 28 U.S.C. § 2412.

[18] 5 U.S.C. § 522(a)(4)(E).

respond to [his] FOIA request . . . conduct a reasonable and adequate search for the requested information, produce forthwith any and all non-exempt records responsive to [his request] . . . and produce a *Vaughn* Index of any responsive records withheld under claim of exemption."[19] He also urged the Court to "[e]njoin the [Defendant] from continuing to withhold any and all non-exempt records responsive to [his] FOIA request."[20]

## B.    *Procedural Background*

Gahagan filed his complaint on September 27, 2014.[21] He filed a "Motion for Summary Judgment" on November 16, 2014.[22] Gahagan filed a "Second Motion for Summary Judgment" on December 16, 2014.[23] On January 23, 2015, the Court granted the first motion for summary judgment in part, denied it in part, and denied it as moot in part.[24] Also on January 23, 2015, the Court granted in part and denied in part Gahagan's "Second Motion for Summary Judgment."[25] Gahagan filed a "Third Motion for Summary Judgment" on March 2, 2015,[26] which the Court granted in part and denied in part on May 1, 2015.[27] On June 30, 2015, Gahagan filed a motion to dismiss, stating that he no longer wished to litigate the remaining issue in the case regarding

---

[19] *Id.* at p. 9.

[20] *Id.* at p. 10.

[21] Rec. Doc. 1.

[22] Rec. Doc. 10.

[23] Rec. Doc. 21.

[24] Rec. Doc. 27 at p. 58.

[25] *Id.* at pp. 58–59.

[26] Rec. Doc. 30.

[27] Rec. Doc. 39.

seventeen pages of records that Gahagan asserted had not been produced.[28]

On July 13, 2015, Gahagan filed the instant motion.[29] Defendant filed an opposition on July 28, 2015.[30] With leave of Court, Gahagan filed a reply on August 5, 2015.[31]

## II. Parties' Arguments

### A.    *Gahagan's Arguments in Support of an Award of Attorney's Fees and Costs*

Gahagan asserts that he is both eligible and entitled to an award of attorney's fees and costs pursuant to FOIA because he substantially prevailed in the underlying litigation pursuant to 5 U.S.C. § 552(a)(4)(E)(ii)(I) and (II).[32] Gahagan contends that 5 U.S.C. § 552(a)(4)(E) provides that:

> (i) the [t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant substantially prevailed. (ii) For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either — (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.[33]

According to Gahagan, he substantially prevailed in his lawsuit because he: "(1) filed a FOIA request with the government; (2) the government failed to disclose the requested records with the legally mandated Vaughn index within 20 business days as mandated by FOIA; (3) Plaintiff sued the government because he had exhausted his administrative remedies; and (4) the agency then

---

[28] Rec. Doc. 43.

[29] Rec. Doc. 49.

[30] Rec. Doc. 50.

[31] Rec. Doc. 54.

[32] Rec. Doc. 49-2 at p. 1.

[33] *Id.* at p. 1 n.1.

released the requested information both voluntarily and pursuant to Court Order.[34]

Gahagan asserts that the Fifth Circuit has explained that in enacting FOIA, Congress has evinced a strong desire "to establish a national policy of open government through the disclosure of government information" and "[a] crucial means of implementing the policy is a liberal attorney fee provision."[35] Gahagan contends that he is eligible for an award of attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E)(i) because after he filed suit and USCIS refused to produce responsive agency records, on the grounds that the documents were duplicates and therefore providing them would be "a complete waste of time," the Court issued an order compelling USCIS to produce the unlawfully withheld "duplicate" agency records and the mandated *Vaughn* index.[36] Gahagan avers that USCIS's argument that providing the duplicate information was a waste of time was an unreasonable opposition and the Fifth Circuit has held that FOIA's fee provision "is designed to deter the government from opposing justifiable requests for information under the FOIA and to punish the government where such opposition is unreasonable."[37]

Gahagan asserts that the Fifth Circuit "has long held that the party may demonstrate that he 'substantially prevailed' in a FOIA lawsuit in one of two ways: (1) obtaining a court order in his favor, or (2) through the catalyst theory."[38] Gahagan contends that the Fifth Circuit held in *Cazalas v. Department of Justice* that the voluntary release of only two documents after suit was filed could

---

[34] *Id.* at p. 3.

[35] *Id.* at p. 4 (citing *Cazalas v. Dep't of Justice*, 709 F.2d 1051, 1057 (5th Cir. 1983)).

[36] *Id.* at pp. 5–6 (citing Rec. Doc. 27).

[37] *Id.* at p. 6 (quoting *Cazalas*, 709 F.2d at 1057).

[38] *Id.* at p. 7 (quoting *Batton v. Internal Revenue Serv.*, 718 F.3d 522, 525).

show that the plaintiff "substantially prevailed" and therefore is eligible for attorney's fees.[39] Gahagan avers that he exhausted his FOIA remedies and his lawsuit served as the catalyst for the disclosure of the requested agency records, as well as the legally required *Vaughn* index.[40]

Gahagan also contends that he is entitled to attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E)(ii).[41] Gahagan asserts that in deciding whether a claimant is entitled to an award, a court should consider four factors: "(1) the benefit to the public deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law."[42] Gahagan asserts that the public clearly benefitted from this litigation.[43] In support, Gahagan cites a Northern District of California case, *Mayock v. Immigration and Naturalization Service*, asserting that *Mayock* is factually and legally identical to this case and the attorney in that case was granted attorney's fees.[44] Gahagan also cites a Fifth Circuit case, *Blue v. Bureau of Prisons*, in which the court stated that "the successful FOIA plaintiff always acts in some degree for the benefit of the public, both by bringing government into compliance with the FOIA disclosure policy and by securing for the public at large the benefits assumed to flow from the disclosure of government information."[45] Gahagan asserts that the release of documents worked to preserve the integrity of

---

[39] *Id.* at p. 8 (citing 660 F.2d 612, 623 (5th Cir. 1981)).

[40] *Id.* at pp. 8–9.

[41] *Id.* at p. 9.

[42] *Id.* (quoting *State of Texas v. Interstate Commerce Comm'n*, 935 F.2d 728, 730 (5th Cir. 1991)).

[43] *Id.* at p. 11.

[44] *Id.* at p. 9 (citing 736 F. Supp. 1561, 1564 (N.D. Cal. May 16, 1990)).

[45] *Id.* at p. 10 (citing 570 F. 2d 529, 533 (5th Cir. 1978)).

Immigration Court proceedings.[46] According to Gahagan, attorney's fees in this case are appropriate because the FOIA response helped protect the public's interest in the fair administration of justice.[47] Gahagan acknowledges that an individual desire to access information does not always mean that there is a public benefit; however, he asserts that an individual desire does not preclude an award of attorney's fees.[48]

Second, Gahagan asserts that there was no commercial benefit to him as he is an immigration attorney who filed this lawsuit in order to obtain information from the government, information that he asserts was necessary to effectively represent his client.[49] Gahagan contends that he was not using the information to make a profit and he actually lost income by having to refuse new cases due to the time-consuming nature of the litigation.[50]

Third, Gahagan contends that the nature of his interest in the records weighs in favor of his entitlement to attorney's fees.[51] In support, Gahagan cites a case from another section of the Eastern District of Louisiana, *Hernandez v. United States Customs and Border Protection Agency*, where, according to Gahagan, the court found that an immigrant placed in deportation proceedings who sued the government to obtain the documents he needed to defend himself implicated "the strong

---

[46] *Id.* (citing *Jarno v. Dep't of Homeland Sec.*, 365 F. Supp. 2d 733, 738 (E.D. Va. Apr. 18, 2005)).

[47] *Id.* (citing *Jarno*, 365 F. Supp. 2d at 738)).

[48] *Id.* (citing *Cazalas v. Dep't of Justice*, 709 F.2d 1051, 1053 (5th Cir. 1983); *Hernandez v. U.S. Customs and Border Protection Agency*, No. 10-4602, 2012 WL 398328, at *8 (E.D. La. Feb. 7, 2012) (Barbier, J.)).

[49] *Id.* at pp. 10–11.

[50] *Id.* at p. 12.

[51] *Id.* at p. 16.

public interest in preserving the administration of justice in our nation's immigration courts."[52] Gahagan asserts that although the government may argue that he filed his FOIA request as a substitute for discovery, "FOIA is the exclusive means that a respondent in Immigration Court proceedings must use to obtain documents for use in immigration proceedings."[53] Gahagan contends that the government routinely refuses to produce requested documents in a timely manner under the statute and he often has to resort to litigation to obtain the agency records he needs to effectively represent his clients.[54] According to Gahagan, although some courts have recognized that an award of attorney's fees is generally inappropriate when a litigant utilizes FOIA as a means of obtaining earlier access to information for use in other pending litigation, this case is distinguishable from those cases because the vast majority them involve business firms seeking trade information for use in private civil litigation, and none involve deportation proceedings.[55]

Fourth, Gahagan asserts that he is entitled to attorney's fees under FOIA due to the government's "deliberate defiance of the law by unlawfully withholding 'duplicate' documents and causing unnecessary litigation in a transparent effort to 'thwart the requester.'"[56] Gahagan contends that USCIS's bad faith litigation is not an isolated incident and Defendant's behavior has been punished in another recent FOIA case.[57] According to Gahagan, the government has the burden of

---

[52] *Id.* at pp. 12–13 (citing *Hernandez*, 2012 WL 398328, at *11).

[53] *Id.* at p. 13 (citing *Jarno*, 365 F. Supp. 2d at 740).

[54] *Id.* at p. 14.

[55] *Id.* at p. 15 (citing *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 712 (D.C. Cir. 1977)).

[56] *Id.* at p. 18 (citing *Blue v. Bureau of Prisons*, 570 F. 2d 529, 533 (5th Cir. 1978)).

[57] *Id.* at pp. 16–17 (citing *DaSilva v. U.S. Citizenship and Immigration Servs.*, No. 13-13, 2014 WL 775606, at *7 (E.D. La. Feb. 24, 2014)).

proof with respect to this element.[58] Gahagan argues that, in this case, USCIS refused to produce all of the requested agency records and the legally required *Vaughn* index until after Plaintiff was forced to file suit and two motions for summary judgment.[59]

Gahagan contends that once a plaintiff is deemed eligible and entitled to attorney's fees, the court turns to the proper amount of the fee award.[60] He asserts that the court determines the proper attorney's fee award by multiplying the hours reasonably expended in the litigation by a reasonable hourly fee, producing what is called the lodestar.[61] Gahagan asserts that he is requesting $300 per hour because that is the "prevailing market rate[] in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation."[62] Gahagan contends that he has been practicing law in the Eastern District of Louisiana for almost eight years and has successfully litigated multiple FOIA cases with identical fact patterns.[63] Gahagan asserts that in *Hernandez*, another section of the Eastern District of Louisiana awarded $300 an hour in a factually and legally similar FOIA case to an attorney with more than eight years experience.[64] In support, Gahagan also attaches affidavits from other attorneys within the Eastern District of Louisiana who assert that $300 is the prevailing hourly rate for the litigation of a FOIA suit by someone with

---

[58] *Id.* at p. 17 (citing *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 235–36 (D.D.C. 2011)).

[59] *Id.*

[60] *Id.* at p. 18 (citing *Summers v. U.S. Dep't of Justice*, 477 F. Supp. 2d 56, 63 (D.D.C. 2007)).

[61] *Id.* (citing *Judicial Watch, Inc. v. Bureau of Land Mgmt.*, 562 F. Supp. 2d 159, 175 (D.D.C. 2008)).

[62] *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

[63] *Id.* at pp. 18–19.

[64] *Id.* at p. 19 (citing *Hernandez v. U.S. Customs and Border Protection Agency*, No. 10-4602, 2012 WL 398328, at *14–16 (E.D. La. Feb. 7, 2012) (Barbier, J.)).

Gahagan's skills, experience, and reputation.[65]

Gahagan also contends that district courts within the Fifth Circuit apply the lodestar method outlined by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.* to calculate fee awards.[66] Gagahan contends that after multiplying the number of hours reasonably expended in the case by the prevailing hourly rate for legal services in the district in order to calculate the lodestar, courts can make adjustments based upon consideration of twelve factors.[67] Gahagan contends that the burden of reasonableness of the hours expended is on the fee applicant.[68] However, Gahagan contends, in *Hernandez*, the court stated that "an agency cannot put a requestor through the time and expense of enforcing compliance with FOIA and then complain that the resources expended were out of proportion to the good obtained."[69] Gahagan requests $25,812.87 representing $25,350 in attorney's fees and $462.87 in costs.[70] Gahagan asserts that his billing records are clear and detailed and the hours expended are reasonable under the facts of the case.[71]

Addressing the twelve *Johnson* factors, Gahagan asserts that litigation was unnecessarily compounded by USCIS's refusal to obey FOIA and therefore the factor "time and labor required" confirms the reasonableness of the lodestar amount.[72] He contends that the second factor, the novelty

---

[65] Rec. Doc. 49-6.

[66] Rec. Doc. 49-2 at p. 19 (citing 488 F.2d 714 (5th Cir. 1974)).

[67] *Id.* at pp. 19–20 (citing *Hernandez*, 2012 WL 398328, at *13).

[68] *Id.* at p. 20 (citing *Hernandez*, 2012 WL 398328, at *13).

[69] *Id.* (citing *Hernandez*, 2012 WL 398328, at *14).

[70] Rec. Doc. 54 at p. 18.

[71] *Id.* at p. 20.

[72] *Id.* at p. 21.

11

and difficulty of the issues involved is met because FOIA procedures are so difficult that no other immigration attorney in the Eastern District of Louisiana is willing to represent clients in FOIA suits.[73] Furthermore, Gahagan contends, in this case, the case was made more difficult by the pressing time constraints imposed by Mr. Amador's pending deportation proceeding.[74] Gahagan also argues that the third factor, the skill required to litigate a FOIA case in federal court, is demonstrated by the fact that no other immigration attorney in this district or market takes these cases.[75] Turning to the fourth factor, preclusion of other employment, Gahagan asserts that he seeks an upward adjustment under this factor because he is a sole practitioner and was precluded from accepting two worthy cases as a result of this case, causing him a loss in $10,000 in income.[76] As for the fifth factor, the customary fee, Gahagan contends that his customary fee, along with other attorneys who practice FOIA law in this district, is $300 per hour where an attorney has more than eight years experience.[77] Addressing the sixth factor, whether the fee is fixed or contingent, and the eleventh factor, the nature and length of professional relationship between the attorney and the client, Gahagan asserts that he is representing himself pro se.[78]

Turning to the seventh factor, the time limitations imposed by the client or the circumstances of the case, Gahagan contends that the circumstances in this case imposed considerable time

---

[73] *Id.*

[74] *Id.*

[75] *Id.*

[76] *Id.*

[77] *Id.* at p. 22 (citing *Hernandez*, 2012 WL 398328, at *14–16).

[78] *Id.* at pp. 22–23.

constraints on Gahagan because Mr. Amador was imprisoned by the government without bond.[79] Gahagan asserts that because there was little time for unnecessary or redundant work, this factor further confirms the reasonableness of the hours Gahagan expended.[80] Gahagan asserts that the eighth factor, the amount involved and the results obtained, is perhaps the most important factor.[81] Gahagan asserts that he achieved the ultimate relief he sought when he filed this lawsuit in forcing the government to disclose the unlawfully withheld "duplicate" agency records and the *Vaughn* index.[82] Gahagan contends that the ninth factor, the experience, reputation, and ability of the attorney, is addressed in the affidavits he submitted from local attorneys describing Plaintiff's ability.[83]

Gahagan seeks an upward adjustment under the tenth factor, the undesirability of the case, which, he asserts, is intended to incentivize attorneys to accept undesirable cases, especially in the civil rights context.[84] Gahagan asserts that he was forced to file this litigation because the government refused to follow the Mandatory Access Law, 8 U.S.C. § 1229a(c)(2)(B), refused to follow FOIA's 20-day mandate in producing the requested agency records and *Vaughn* index, and then refused to properly adjudicate Gahagan's appeal, "all while knowing that Mr. Amador's deportation hearing was fast approaching."[85] Finally, addressing the twelfth factor, awards in similar

---

[79] *Id.* at p. 22.

[80] *Id.*

[81] *Id.* (citing *Abner v. Kansas City So. Ry. Co.*, 541 F.3d 372, 376–77 (5th Cir. 2008)).

[82] *Id.* (citing Rec. Doc. 27).

[83] *Id.* at pp. 22–23 (citing Rec. Doc. 49-6).

[84] *Id.* at p. 23 (citing *Cooper v. Pentecost*, 77 F.3d 829 (5th Cir. 1996)).

[85] *Id.*

cases, Gahagan points to the court's ruling in *Hernandez* awarding $300 per hour for an attorney with more than eight years experience and $180 per hour for an attorney with approximately two years experience.[86] Gahagan acknowledges, however, that another section of the Eastern District of Louisiana recently awarded only $200 per hour in a FOIA case.[87]

Gahagan asserts that a portion of his fee request represents time spent in preparing this fee application which is permitted under "fees on fees" litigation precedent.[88] Furthermore, Gahagan asserts that he is entitled to recovery of $462.87 in costs pursuant to 5 U.S.C. § 552(a)(4)(E)(i), which provides for recovery of costs.[89] Finally, Gahagan requests that the Court order Defendant to pay Gahagan within a reasonable amount of time, to be determined by the Court, because, in another litigation, it took Defendant over a year to pay Gahagan his attorney's fees.[90]

## B.    *Defendant's Arguments in Opposition to an Award of Attorney's Fees*

Defendant asserts that pursuant to 5 U.S.C. § 552(a)(4)(E), a prevailing plaintiff may be awarded attorney's fees in a FOIA litigation if they are determined to be both eligible and entitled to the award.[91] Defendant contends that even if Gahagan is eligible for attorney's fees, he is not entitled to them.[92] However, Defendant asserts that if the Court finds that Gahagan is both eligible

---

[86] *Id.* (citing 2012 WL 398328, at *14–16).

[87] *Id.* (citing *DaSilva v. U.S. Citizenship and Immigration Servs.*, No. 13-13, 2014 WL 775606, at *9 (E.D. La. Feb. 24, 2014) (Africk, J.)).

[88] *Id.* at p. 24 (citing *Sierra Club v. Envtl. Prot. Agency*, 769 F.2d 769, 808 (D.C. Cir. 1985)).

[89] Rec. Doc. 54 at p. 18.

[90] Rec. Doc. 49 at p. 1.

[91] Rec. Doc. 50 at p. 1.

[92] *Id.*

for and entitled to attorney's fees, the fee should be nominal given Gahagan's "minimal success" in obtaining only 10 duplicate documents that were already in his possession.[93]

Defendant contends that because the Court entered a judicial order requiring it to release ten pages of responsive material that was originally withheld as duplicative, under 5 U.S.C. § 552(a)(4)(E), he is eligible for some attorney's fees.[94] However, Defendant asserts that Gahagan fails to meet any of the four factors entitling a plaintiff to attorney's fees in a FOIA case.[95] First, Defendant contends that Gahagan's request is strictly a personal request, garnering no public benefit as he was attempting to utilize this FOIA proceeding as a means to obtain discovery in his client's deportation proceeding.[96] Defendant asserts that although there is case law stating that a successful FOIA plaintiff always achieves some degree of public benefit by bringing the government into compliance with FOIA and the benefit from the public disclosure of government information, this "broadly defined public benefit" is not the benefit to which this factor is addressed.[97]

Turning to the second and third factors, the commercial benefit to the plaintiff and the plaintiff's interest in obtaining the requested records, Defendant asserts that Gahagan's motivation was personal in nature and even if he did not have any commercial interest in the material sought, "his personal interest in the material is so great it outweighs an award of attorney's fees."[98]

---

[93] *Id.*

[94] *Id.* at p. 3.

[95] *Id.* (citing *State of Texas v. Interstate Commerce Comm'n*, 935 F.2d 728, 730 (5th Cir. 1991)).

[96] *Id.*

[97] *Id.* at pp. 3–4 (citing *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995); *Ellis v. United States*, 941 F. Supp. 1068, 1078 (D. Utah 1996)).

[98] *Id.* at p. 4 (citing *Read v. F.A.A.*, 252 F. Supp. 2d 1008, 1111 (W.D. Wash. 2003)).

Defendant also contends that when FOIA is used as a discovery tool, an award of attorney's fees is not appropriate.[99]

Finally, Defendant contends that Gahagan must show not only that Defendant made withholdings in this case but also that such withholdings were unreasonable.[100] Defendant asserts that although the Court determined that withholding duplicative material was improper, its withholding should not be viewed as unreasonable.[101] Defendant cites a District Court for the District of Columbia case, *Kishore v. Department of Justice*, where, Defendant asserts, the court stated that the "withholding of duplicates of five released pages is immaterial to the FOIA claim because 'once all requested records are surrendered, federal courts have no further statutory function to perform.'"[102] Defendant contends that *Kishore* suggests that withholding duplicates is appropriate.[103] Furthermore, Defendant avers that the Court in this case, in reaching its decision on Gahagahn's motion for summary judgment regarding the withholding of duplicative material, based its conclusion on an interpretation of the statutory text of FOIA as the Court did not find any language in the statute regarding the withholding of duplicate material.[104] Defendant asserts that, because the Court did not cite any illustrative case law, Defendant did not ignore any clear precedent or law to the contrary in withholding duplicative documents, but rather "took a practical approach

---

[99] *Id. (*citing *Simon v. United States*, 587 F. Supp. 1029 (D.D.C. 1984)

[100] *Id.* at p. 5.

[101] *Id.*

[102] *Id.* at pp. 5–6 (quoting No. 07-1299, 2008 WL 4853413, at *1 (D.D.C. Nov. 19, 2008)).

[103] *Id.* at p. 6.

[104] *Id.*

of not providing documents already in Plaintiff's possession."[105]

Defendant asserts that even if Gahagan is entitled to an award of attorney's fees, his claim must be significantly reduced because the amount Gahagan seeks is excessive.[106] First, Defendant asserts that an hourly rate of $300 is excessive as the Fifth Circuit recently affirmed a decision setting Gahagan's hourly rate at $200 per hour.[107] Defendant contends that the Fifth Circuit rejected Gahagan's reliance on *Hernandez v. United States Customs and Border Protection Agency*, stating that "$300 an hour appeared to be atypically high."[108] Defendant also asserts that another section of the Eastern District of Louisiana, in *St. Stephen's Missionary Baptist Church v. Taylor*, in 2008, assessed an hourly rate of $150 for a partner, where the partner was David J. Krebs, a skilled attorney with over 25 years experience in the area of the subject litigation.[109] Defendant asserts that Gahagan's request for $300 an hour is excessive as he is only eight years removed from law school and the majority of his experience is handling immigration matters, not FOIA matters.[110] According to Defendant, his level of experience would most likely classify him as a Senior Associate at best in a law firm, entitling him to a rate of roughly $175 an hour.[111]

Defendant also contends that in light of the *Johnson* factors, any award of attorney's fees to Gahagan should be decreased given the amount of material produced in response to his broad FOIA

---

[105] *Id.*

[106] *Id.*

[107] *Id.* (citing *DaSilva v. U.S. Citizenship and Immigration Servs.*, 599 F. App'x 535 (5th Cir. 2014)).

[108] *Id.* at pp. 6–7 (citing *DaSilva*, 599 F. App'x at 543)).

[109] *Id.* at p. 7 (citing No. 05-294, 2008 WL 4057162 (E.D. La. Aug. 29, 2008)).

[110] *Id.* at p. 8.

[111] *Id.* at pp. 8–9.

requests and the reasonableness of Defendant's withholdings.[112] Because, Defendant asserts, Gahagan was largely unsuccessful, he should be compensated only for the time spent on successful claims.[113] In support, Defendant cites a District Court for the District of Columbia case, *Electronic Privacy Information Center v. United States Department of Homeland Security*, where the court stated that the plaintiff could recover fees for work done only on his successful claims and then consider whether the success obtained on those claims is proportional to the efforts expended by counsel.[114]

Defendant also asserts that Gahagan's claim for attorney's fees should be reduced for his use of poor billing judgment.[115] Citing the Fifth Circuit in *Saizan v. Delta Concrete Products*, Defendant asserts that the burden is on the plaintiff to show the reasonableness of the hours billed and the use of billing judgment, including documentation of the hours charged and those written off as unproductive, excessive, or redundant.[116] Defendant points to Gahagan's entry of 7.6 hours of research before drafting the complaint as an example of "questionable billing tactics," arguing that Gahagan has litigated several FOIA cases and has filed several complaints in district.[117] Furthermore, Defendant asserts that although Gahagan billed more than 21 hours of research time before drafting his motions for summary judgment, the majority of each motion is "bloated with the

---

[112] *Id.* at p. 9.

[113] *Id.*

[114] *Id.* (citing 982 F. Supp. 2d 56, 60 (D.D.C. 2013).

[115] *Id.* at p. 10.

[116] *Id.* (citing 448 F.3d 795, 799 (5th Cir. 2006)).

[117] *Id.* (citing Rec. Doc. 49-4 at p. 2).

same canned caselaw and statutory guidance."[118] Defendant argues that the amount of time Gahagan claimed to have worked on this case should be reduced accordingly.[119]

## C.    Gahagan's Arguments in Further Support of an Award of Attorney's Fees and Costs

In reply, Gahagan asserts that Defendant has agreed that Gahagan is eligible for an award of attorney's fees.[120] In response to Defendant's assertion that he is not entitled to attorney's fees because there was no public benefit, Gahagan asserts that the court in *Hernandez* rejected all of the government's arguments that the plaintiff's FOIA request was "strictly a personal request," was "solely self-motivated," and was "a means to obtain discovery," in what was a factually and legally similar case.[121] In response to Defendant's argument that Gahagan used FOIA as a means to obtain discovery, Gahagan asserts that "FOIA is the exclusive means that a respondent in Immigration Court proceedings must use to obtain documents for use in immigration proceedings."[122] Gahagan repeats his argument that although some courts have found that an award of attorney's fees is inappropriate when a litigant utilizes FOIA as a means of obtaining earlier access to information for use in other pending litigation, those cases are readily distinguishable from the instant case.[123] Gahagan also repeats his assertion that the information he obtained through this litigation benefitted the public by compelling the government to comply with FOIA, and because the information he sought was to be introduced in his client's immigration proceedings and shed light on the country's

---

[118] *Id.* at pp. 10–11.

[119] *Id.* at p. 11.

[120] Rec. Doc. 54 at p. 2 (citing Rec. Doc. 50 at p. 3).

[121] *Id.* (citing 2012 WL 398328, at *8–9).

[122] *Id.* (quoting *Jarno v. Dep't of Homeland Sec.*, 365 F. Supp. 2d 733, 740 (E.D. Va. Apr. 18, 2005)).

[123] *Id.* at p. 3 (citing *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 712 (D.C. Cir. 1977)).

immigration policies.[124]

Gahagan asserts that Defendant agrees with him that the "commercial benefit" factor favors granting him attorney's fees.[125] In response to Defendant's argument that Gahagan's personal interest "outweighs an award of attorney's fees," Gahagan asserts that his motivation was not personal in nature as he was not suing in order to obtain documents to represent himself, nor did he receive any type of bonus for successfully defending his client.[126] Gahagan contends that he had a professional and ethical duty to protect his client's Fourth Amendment right to procedural due process and Sixth Amendment right to effective assistance of counsel.[127] Gahagan also repeats his assertion that he lost $10,000 in income by having to refuse cases due to the time-consuming nature of the instant litigation.[128]

In response to Defendant's arguments regarding the reasonableness of the withholding, Gahagan asserts that Defendant attempts to transfer the burden on this element from Defendant to Plaintiff in violation of FOIA precedent.[129] Gahagan asserts that Defendant cannot meet its burden of showing that its argument that the provision of the requested documents was "a complete waste of time" had "even a colorable basis in law."[130] Gahagan contends that he is entitled to attorney's

---

[124] *Id.* at pp. 3–4 (citing *Jarno*, 365 F. Supp. 2d at 738).

[125] *Id.* at p. 5.

[126] *Id.*

[127] *Id.* at pp. 5–6 (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993); *Padilla v. Kentucky*, 559 U.S. 356 (2010)).

[128] *Id.* at p. 6.

[129] *Id.* at p. 7 (citing *Davy v. Central Intelligence Agency*, 550 F.3d 1155, 1163 (D.C. Cir. 2008)).

[130] *Id.*

fees due the government's "deliberate defiance of the law by unlawfully withholding records and causing unnecessary litigation in an obvious effort to simply 'thwart the requester.'"[131]

Gahagan contends that Defendant, in opposing the requested hourly rate, cites cases as old as 1996, cites no cases within the last seven years, and only two cases within the last ten years.[132] Gahagan contends that in *DaSilva*, a case cited by Defendant, the court divided the plaintiff's single FOIA cause of action for the purpose of granting and denying attorney's fees and reduced the plaintiff's award by over 85%.[133] Gahagan asserts that no other court has followed this division scheme since.[134] Gahagan asserts that Defendant has submitted no direct evidence to contradict the affidavits submitted by Gahagan affirming that $300 is the prevailing rate for similar work for attorneys of comparable experience.[135] In response to Defendant's assertion that the majority of Gahagan's experience comes from immigration matters, not FOIA matters, Gahagan asserts that this is false.[136]

Finally, in response to Defendant's argument that Gahagan's demand should be decreased given the amount of material that was produced, Gahagan quotes the court in *Hernandez* stating "an agency cannot put a requestor 'through the time and expense of enforcing compliance with FOIA and then complain that the resources expended were out of proportion to the good obtained.'"[137]

---

[131] *Id.* at pp. 7–8 (citing *Blue v. Bureau of Prisons*, 570 F. 2d 529, 534 (5th Cir. 1978)).

[132] *Id.* at p. 8.

[133] *Id.* at pp. 8–9 (citing No. 13-13, 2014 WL 775606, at *7 (E.D. La. Feb. 24, 2014) (Africk, J.)).

[134] *Id.* at p. 9.

[135] *Id.*

[136] *Id.*

[137] *Id.* at pp. 9–10 (quoting 2012 WL 398328, at *14).

## III. Law and Analysis

### A.    *Legal Standard*

When a plaintiff brings a lawsuit under FOIA, a court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."[138] The Supreme Court has stated that "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."[139] The Fifth Circuit has recognized that FOIA's attorney fee provision plays a critical role in effectuating this purpose:

> Congress evinced its strong desire, by enacting the FOIA, to establish a national policy of open government through the disclosure of government information. . . . A crucial means of implementing this policy is a liberal attorney fee provision. The fee provision is designed to remove the barriers a private individual faces in insuring government compliance with the policy of open government. . . . Thus, the fee provision serves three clear policies. First, it acts as an incentive for private individuals to pursue vigorously their claims for information. It allows litigants to overcome barriers, most particularly the need for legal fees and legal expertise, that government may erect in an effort to escape compliance with the law. This same incentive is necessary where an attorney seeking information is utilizing his or her own services. Second and third, the provision serves a deterrent and, to a lesser extent, a punitive purpose. Congress recognized the practical effect of the fee provision is that, if the government had to pay legal fees each time it lost a case, it would be much more careful to oppose only those areas it had a strong chance of winning. . . . The fee provision is designed to deter the government from opposing justifiable requests for information under the FOIA and to punish the government where such opposition is unreasonable. These goals apply with equal force where an attorney litigant proceeds pro se.[140]

---

[138]  5 U.S.C. § 552(a)(4)(E)(i).

[139]  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citations omitted).

[140]  *Cazalas v. Dep't of Justice*, 709 F.2d 1051, 1057 (5th Cir. 1983) (internal quotations and citations omitted).

The basic framework for determining whether an award of attorney's fees and costs is appropriate is a two-step analysis. First, the Court must determine the threshold issue of whether the FOIA litigant is "eligible" for a fee award. In order to be deemed eligible for a fee award, the plaintiff must have "substantially prevailed" in the underlying FOIA lawsuit.[141] A plaintiff can be said to have "substantially prevailed" if he has obtained relief through either "(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."[142] If a court determines that a plaintiff is "eligible" for an award of attorney's fees, the court next evaluates whether the plaintiff is entitled to such an award.[143] This determination is left to the sound discretion of the district court.[144] In exercising this discretion, however, the court must consider four factors: "(1) the benefit to the public deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law."[145] All four factors are to be weighed as guides to the court's discretion in FOIA attorneys' fees awards and no one factor is dispositive.[146]

---

[141] 5 U.S.C. § 552(a)(4)(E)(i).

[142] 5 U.S.C. § 552(a)(4)(E)(ii)(I–II).

[143] *State of Texas v. Interstate Commerce Comm'n*, 935 F.2d 728, 730 (5th Cir. 1991).

[144] *Blue v. Bureau of Prisons*, 570 F.2d 529, 533 (5th Cir. 1978).

[145] *Id.*

[146] *Id.* (holding that the district court abused its discretion in denying an award of attorney's fees after finding that there was no benefit to the public deriving from the case and discussing none of the other factors).

**B.**     *Analysis*

**1.**     **Gahagan's Eligibility for an Award of Attorney's Fees**

Gahagan asserts that he is eligible for an award of attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(e)(ii) because this Court issued an order compelling USCIS to produce the unlawfully withheld "duplicate" agency records and the mandated *Vaughn* index.[147] Gahagan also asserts that he is eligible for an award of attorney's fees because his lawsuit was the catalyst for the disclosure of the requested agency records.[148] Defendant acknowledges that the Court ordered Defendant to release ten pages of responsive material that were originally withheld as duplicates, thereby making Gahagan eligible for an award of attorney's fees.[149] Therefore, as it is uncontested that the Court ordered Defendant to produce ten pages of responsive records, Gahagan is eligible for an award of attorney's fees.

**2.**     **Gahagan's Entitlement to an Award of Attorney's Fees**

Gahagan asserts that he is entitled to attorney's fees because: (1) the public derived a benefit from this case; (2) Gahagan did not obtain any commercial benefit from this lawsuit; (3) he filed this suit in order to obtain documents for his client's deportation proceeding; and (4) Defendant has not satisfied its burden to show that its withholding had a reasonable basis in law.[150] Defendant contends that Gahagan is not entitled to attorney's fees because the request was strictly personal and garnered no public benefit, Gahagan used this litigation as a means of discovery in his client's deportation

---

[147] Rec. Doc. 49-2 at p. 6 (citing Rec. Doc. 27).

[148] *Id.* at p. 9.

[149] Rec. Doc. 50 at p. 3.

[150] Rec. Doc. 49-2 at pp. 9–18; Rec. Doc. 54 at pp. 2–8.

24

proceedings, and Gahagan has not demonstrated that Defendant's withholdings were unreasonable in light of the absence of any clear precedent or law regarding the withholding of duplicate documents.[151] The Court will address each of these arguments in turn.

### (a)  *Public Benefit*

Gahagan, citing the Fifth Circuit in *Blue v. Bureau of Prisons*, asserts that this litigation resulted in a public benefit because a successful FOIA plaintiff always acts in some degree for the benefit of the public by bringing the government into compliance with FOIA and by securing the benefits assumed to flow from the public disclosure of government information.[152] The court also found, however, in weighing this factor, that a court should take into account "the degree of dissemination and likely public impact that might be expected from a particular disclosure."[153] The court stated that this factor "does not particularly favor attorneys' fees where the award would merely subsidize a matter of private concern; this factor rather speaks for an award where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices."[154] Therefore, Gahagan may not rely upon this general benefit in order to establish that this first factor has been met.

In support of his contention that this litigation created a benefit for the public, Gahagan also cites a Northern District of California case, *Mayock v. Immigration and Naturalization Service*, where the court found that there was "no doubt" that the public benefitted from the results of the

---

[151] Rec. Doc. 50 at pp. 2–6.

[152] Rec. Doc. 49-2 at p. 10 (citing 570 F.2d 529, 533 (5th Cir. 1978)).

[153] 570 F. 2d 529, 533 (5th Cir. 1978)).

[154] *Id.* at 533–34.

25

litigation because the judgment compelled the Immigration and Naturalization Service ("INS") to comply with FOIA requirements "in a setting where the denial of the information was having a substantial adverse impact on the ability of the litigants to protect their interests in immigration litigation."[155] Gahagan also cites an Eastern District of Virginia case, *Jarno v. Department of Homeland Security*, where the court found that a plaintiff, who had requested documents for use in his Immigration Court proceedings, had demonstrated a public benefit because the requested documents "provided information to the public regarding the Department of Homeland Security's handling of Plaintiff's high-profile political asylum case" and "the request and release of the documents worked to preserve the integrity of Immigration Court proceedings."[156] In addition, Gahagan cites *Hernandez*, an Eastern District of Louisiana case, where the court found that FOIA litigation had garnered a public benefit in the case of a plaintiff in deportation proceedings who sought information related to the United States Customs and Border Protection Agency's immigration enforcement actions in the city of New Orleans generally, and specifically with respect to the incident in which he had been arrested "to establish an ongoing pattern of unlawful surveillance and suspicionless raids of immigrant construction workers on day laborer corners in New Orleans."[157]

In all three of those cases, however, the plaintiff either sought information outside of that which was only relevant to his own case, or the requested documents were broadly disseminated to the public. In *Mayock*, the suit was originally filed on behalf of certain clients but was later

---

[155] Rec. Doc. 49-2 at p. 9 (citing 736 F. Supp. 1561, 1564 (N.D. Cal. 1990).

[156] *Id.* (citing *Jarno v. Dep't of Homeland Sec.*, 365 F. Supp. 2d 733, 739 (E.D. Va. Apr. 18, 2005)).

[157] *Id.* (citing *Hernandez v. U.S. Customs and Border Protection Agency*, No. 10-4602, 2012 WL 398328, at *1, *8 (E.D. La. Feb. 7, 2012) (Barbier, J.)).

continued with the plaintiff requesting information regarding INS's "pattern and practice of not complying with FOIA in immigration cases."[158] The court in *Jarno* emphasized the degree of dissemination of the requested information to the press and public, stating that the plaintiff's asylum case had received attention from Amnesty International and numerous members of Congress, as well as in national and local press.[159] In *Hernandez*, the court found that the plaintiff had used the disclosed records to increase public awareness of the issues of targeted immigration enforcement in New Orleans.[160] Here, Gahagan's requested records pertain solely to his client for use in a deportation proceeding. Therefore, Gahagan's case is not analogous to *Mayock*, *Jarno*, or *Hernandez*.

Gahagan also cites *Davy v. Central Intelligence Administration*, a D.C. Circuit case, in support of his contention that he is "the quintessential requestor of government information envisioned by FOIA."[161] However, in *Davy*, the plaintiff sought information regarding the individuals allegedly involved in President Kennedy's assassination, and had asserted that the released documents provided new information bearing on the controversy over a contention that the Central Intelligence Administration was involved in the assassination plot.[162] Gahagan's request of documents pertaining specifically to his client, for use in his client's deportation proceedings, does not serve the public in a similar way as the information requested in *Davy*.

Gahagan also asserts that the public benefitted from the government's compliance with his

---

[158] 736 F. Supp. at 1562.

[159] 365 F. Supp. 2d at 738.

[160] 2012 WL 398328, at *9.

[161] Rec. Doc. 49-2 at p. 9 (citing 550 F.3d 1155, 1157 (D.C. Cir. 2008)).

[162] 550 F.3d at 1159.

FOIA request because the government's response "worked to preserve the integrity of Immigration Court proceedings."[163] In support, Gahagan cites *Jarno*, where a judge in the Eastern District of Virginia concluded that the plaintiff's success on his FOIA claim contributed to the legitimacy of the immigration and asylum process.[164] In *Jarno*, the court cited a District of New Jersey case, *Landano v. United States Department of Justice*, for the proposition that "[a]ttorney's fees are appropriate where a FOIA response helps protect the public's interest in the 'fair and just' administration of justice."[165] The court in *Jarno* stated that the release of documents to the plaintiff allowed the Immigration Court to make a determination based on all the relevant evidence regarding the plaintiff's political asylum case, thereby preserving the fairness and legitimacy of the proceedings.[166] In this case, however, it appears undisputed that the documents sought by Gahagan were actually duplicates of materials that he already possessed.[167] Therefore, Gahagan cannot rely upon the use of these documents in an immigration proceeding as the basis of a finding that this case resulted in a public benefit because these documents were duplicates of documents that were previously disclosed to Gahagan.[168]

---

[163] Rec. Doc. 49-2 at p. 10 (citing *Jarno v. Dep't of Homeland Sec.*, 365 F. Supp. 2d 733, 738 (E.D. Va. Apr. 18, 2005)).

[164] *Id.* (citing 365 F. Supp. 2d at 739).

[165] 365 F. Supp. 2d at 739 (citing *Landano v. U.S. Dep't of Justice*, 873 F. Supp. 884, 892 (D.N.J. 1994)).

[166] *Id.*

[167] Rec. Doc. 49-2 at p. 18.

[168] Citing a Northern District of New York case, *Smith v. Department of Justice*, Gahagan also asserts that attorney's fees are still properly awarded when an individual is serving a legitimate personal interest such as remaining in the United States with resident alien status. Gahagan provides the case number; however, provides no other case citation, and the Court was unable to locate the opinion. Regardless, Gahagan has not identified any Fifth Circuit precedent or other caselaw from this circuit that supports his claim that the production of documents that Gahagan already had in his possession served the public interest.

*(b)*     ***Commercial Benefit***

Gahagan asserts that he filed this lawsuit because he has a professional and ethical duty to obtain all unlawfully withheld agency records in order to effectively represent his client.[169] Gahagan asserts that he received no commercial benefit and actually lost income by having to refuse new cases due to the time-consuming nature of the litigation.[170] The Fifth Circuit in *Blue v. Bureau of Prisons*, in discussing this factor, noted that, unlike many individuals and nonprofit groups, commercial plaintiffs have a private, self-interest motive and often pecuniary benefit that is sufficient to insure the vindication of the rights enumerated in FOIA.[171] Defendant does not appear to contest Gahagan's assertion that he obtained no commercial benefit, arguing only that Gahagan's personal interest in the requested material outweighs this factor.[172] Therefore, the Court finds that this factor weighs in favor of an award of attorney's fees.

*(c)*     ***Nature of Plaintiff's Interest in the Records***

Gahagan asserts that because he sought the records in order to assist his client in his removal proceedings, this factor weighs in favor of an award of attorney's fees.[173] On the other hand, Defendant contends that Gahagan is not entitled to an award of attorney's fees because Gahagan's personal interest in the records outweighs the other factors.[174]

Gahagan contends that in *Hernandez*, another section of the Eastern District of Louisiana

---

[169] Rec. Doc. 54 at p. 5.

[170] *Id.* at p. 12.

[171] 570 F.2d 529, 534 (5th Cir. 1979) (citing S. Rep. No. 854, at 19, 93d Cong., 2d Sess. 19 (1974)).

[172] Rec. Doc. 50 at p. 4.

[173] Rec. Doc. 49-2 at p. 12.

[174] Rec. Doc. 50 at p. 4.

found that this weighed in favor of an award of attorney's fees where the plaintiff sought the requested records to ensure that he was afforded a full and fair hearing in his pending deportation proceeding.[175] Gahagan asserts that the court stated that the plaintiff's interest, while personal in nature, also implicated the strong public interest in preserving the administration of justice in our nation's immigration courts.[176] The court in *Hernandez* found the Eastern District of Virginia case, *Jarno*, which Gahagan also cites, instructive.[177] The court in *Jarno*, in discussing this factor, explained that the plaintiff's central interest in that case was to force the defendant to disclose the requested documents in order to facilitate the fair adjudication of his political asylum case in Immigration Court and, although this was his main motivation, the public benefit derived from the released documents and his case overall was substantial.[178] In *Jarno*, the court stated that "[a]ttorney's fees are appropriate where a FOIA response helps protect the public's interest in the fair and just administration of justice."[179]

In opposition, Defendant cites a Western District of Washington case, *Read v. Federal Aviation Administration*, where the court found that although the plaintiff had no commercial interest in the requested records, his personal interest was sufficient to motivate him to pursue the FOIA litigation and therefore, although the commercial benefit factor weighed in favor of granting

---

[175] Rec. Doc. 49-2 at p. 12 (citing *Hernandez v. U.S. Customs and Border Protection Agency*, No. 10-4602, 2012 WL 398328, at *11 (E.D. La. Feb. 7, 2012) (Barbier, J.)).

[176] *Id.* at p. 13 (citing *Hernandez*, 2012 WL 398328, at *11).

[177] 2012 WL 398328, at *10.

[178] *Jarno v. Dep't of Homeland Sec.*, 365 F. Supp. 2d 733, 739–40 (E.D. Va. 2005).

[179] 365 F. Supp. 2d at 739.

attorney's fees, the factor was outweighed by the nature of the plaintiff's interest.[180] In *Read*, the plaintiff sought records from the *Federal Aviation Administration*.[181] The opinion does not explain, however, what information the requested records contained or why the plaintiff wanted the records. Therefore, the Court does not find *Read*, which is not binding, persuasive. Gahagan's asserted interest in this case was motivated by his desire to effectively represent his client in his removal proceedings. Although Gahagan does not appear now to contest that the documents he sought were in fact duplicates, at the time that he moved for summary judgment, the Court noted that Defendant had not furnished the Court with any information that would permit the Court to determine whether the documents were actually duplicates of documents already disclosed.[182] Therefore, as in *Hernandez*, the Court finds that Gahagan's interest in the requested records also implicates the strong public interest in preserving the administration of justice in our nation's immigration courts.

Defendant also asserts that an award of attorney's fees is inappropriate in this case because Gahagan used the FOIA litigation as a means of discovery in his client's deportation proceedings.[183] In support, Defendant cites cases from the D.C. Circuit, the District Court for the District of Columbia, the District of Utah, and the Northern District of California, stating that when FOIA is used as a discovery tool, an award of attorney's fees is inappropriate.[184] In reply, Gahagan cites

---

[180] 252 F. Supp. 2d 1108, 1111 (W.D. Wash. 2003).

[181] *Id.* at 1109.

[182] Rec. Doc. 27 at p. 39.

[183] Rec. Doc. 50 at p. 4.

[184] *Id.* at pp. 4–5 (citing *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 712 (D.C. Cir. 1977); *Horsehead Indus., Inc. v. EPA*, 999 F. Supp. 59, 67 (D.D.C. 1998); *Ellis v. United States*, 941 F. Supp. 1068, 1079 (D. Utah 1996); *Md. Dep't of Human Res. v. Sullivan*, 738 F. Supp. 555, 563 (D.D.C. 1990); *Simon v. United States*, 587 F. Supp. 1029 (D.D.C. 1984); *Guam Contractors Ass'n v. Dep't of Labor*, 570 F. Supp. 163, 169 (N.D. Cal. 1983)).

*Hernandez*, *Jarno*, and two Board of Immigration cases, *Matter of Henriquez Rivera* and *Matter of Khalifah*, in support of his assertion that there is no right to discovery in immigration proceedings, and that FOIA is the exclusive means that a respondent in Immigration Court proceedings must use to obtain documents.[185] In *Matter of Khalifah*, the Board of Immigration Appeals specifically stated that there is no right to discovery in deportation proceedings.[186] As the cases cited by Defendant demonstrate, a concern about using FOIA as a discovery tool arises when the plaintiff has used FOIA "as a substitute for discovery in private litigation with the government."[187] Here, Gahagan had no other option in obtaining these records. Furthermore, none of the cases cited by Defendant involve deportation proceedings. Therefore, the fact that Gahagan used FOIA in the instant litigation in order to obtain records to be used in a deportation proceeding does not weigh against an award of attorney's fees.

### *(d)    Reasonableness of the Government's Withholding*

Finally, Gahagan asserts that Defendant has not satisfied its burden to show that its withholding was reasonable.[188] In opposition, Defendant contends that Gahagan has failed to demonstrate that Defendant's withholding was unreasonable.[189] Defendant asserts that the Court, in ruling on Gahagan's motions for summary judgment, reached its conclusion regarding the release

---

[185] Rec. Doc. 49-2 at pp. 13–14 (citing *Hernandez*, 2012 WL 398328, at *10; *Jarno*, 365 F. Supp. 2d at 740; *Matter of Henriquez Rivera*, 25 I&N Dec. 575, 579 (BIA 2011); *Matter of Khalifah*, 21 I&N Dec. 107, 112 (BIA 1995)).

[186] 21 I&N Dec. 107, 112 (BIA 1995).

[187] *Sampson*, 559 F.2d at 712.

[188] Rec. Doc. 49-2 at p. 18.

[189] Rec. Doc. 50 at p. 5.

of duplicative material by interpreting the statutory text of FOIA.[190] Defendant contends that there is no language in FOIA regarding the withholding of duplicative material and no clear precedent, and therefore, its withholding was not unreasonable.[191]

The Fifth Circuit in *Blue v. Bureau of Prisons* stated that the reasonableness of the government's withholding factor weighs in favor of an award of attorney's fees if the agency's nondisclosure "was designed to avoid embarrassment or thwart the requester."[192] Gahagan asserts that the burden is on Defendant to show that its withholding is reasonable, but cites no Fifth Circuit precedent for this assertion. The D.C. Circuit in *Davy v. Central Intelligence Agency* found that this factor requires a court to answer not whether the plaintiff has affirmatively shown that the agency was unreasonable, "but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit."[193] However, even if demonstrating this factor is Gahagan's burden, the Court finds that Gahagan has demonstrated that the agency's failure to disclose was unreasonable.

The Fifth Circuit has held that FOIA's disclosure exemptions are "explicitly limited by statute and should be construed narrowly."[194] The withholding at issue in this case was not based upon any statutory exception, but rather the government's statement that the requested documents were duplicates.[195] The Court, in granting Gahagan's motion for summary judgment, found that there

---

[190] *Id.* at p. 6.

[191] *Id.*

[192] 570 F.2d 529, 534 (5th Cir. 1978).

[193] 550 F.3d 1155, 1162–63 (D.C. Cir. 2008).

[194] *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010) (citations omitted).

[195] Rec. Doc. 27 at p. 39.

was no language in FOIA capable of supporting an exemption on the basis that a document is a "duplicate" of another, and, even if any such language existed, Defendant had not furnished the Court with any information that would permit it to determine de novo whether the documents were actually duplicates of documents already disclosed.[196] Defendant asserts that it did not "unreasonably ignore clear precedent or law to the contrary in withholding duplicate documents, but rather took a practical approach of not providing documents already in Plaintiff's possession."[197] However, the Supreme Court has found that FOIA establishes a "strong presumption in favor of disclosure," and accordingly "places the burden on the [government] agency [to which a request has been made] to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document."[198] Therefore, in light of the clear precedent of the Supreme Court and the Fifth Circuit, Gahagan has demonstrated that Defendant's actions in withholding the requested documents were unreasonable.

### (e)    Conclusion

Weighing these factors, the Court concludes that an award of attorney's fees is appropriate. Although there was no identifiable public benefit that resulted from the disclosure of these documents, the factors concerning commercial benefit, the plaintiff's interest in the records, and the unreasonableness of Defendant's withholding all favor an award of attorney's fees.

### 3.    The Reasonableness of Gahagan's Requested Attorney's Fees

Gahagan requests an award of $25,350 in attorney's fees representing a rate of $300 per

---

[196] *Id.*

[197] Rec. Doc. 50 at p. 6.

[198] *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).

hour, as well as costs in the amount of $462.87.[199] Defendant opposes this award on the grounds that:

(1) Gahagan's requested rate of $300 is inappropriate and unsupported by other cases in the district;

(2) in light of the *Johnson* factors, any award should be reduced given the amount of material that

was produced in response to Gahagan's broad FOIA requests and the reasonableness of Defendant's

withholdings; (3) Gahagan should only be compensated for time spent on successful claims; and (4)

Gahagan exercised poor billing judgment.[200]

Courts in the Fifth Circuit engage in a two-step process to assess attorney's fees. First, a

lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate

hourly rate in the community for such work.[201] "There exists a strong presumption of the

reasonableness of the lodestar amount."[202] However, after calculating the lodestar, a district court

may decrease or enhance the amount of attorney's fees based on the relative weights of the twelve

factors set forth in *Johnson v. Georgia Highway Express, Inc.*[203] These factors are: (1) the time and

labor required to litigate the matter; (2) the novelty and difficulty of the issues; (3) the skill required

---

[199] Rec. Doc. 54 at p. 18.

[200] Rec. Doc. 50 at pp. 6–11.

[201] *Saizan v. Delta Concrete Prods. Co.,* 448 F.3d 795, 799 (5th Cir. 2006).

[202] *Id.* at 800.

[203] *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). Traditionally, courts have considered the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) when calculating attorney's fees. In *Perdue v. Kenny A. ex. rel. Winn,* 559 U.S. 542, 550–551 (2010), the Supreme Court noted that the *Johnson* factors were "[o]ne possible method" for determining reasonable attorney's fees, but that the factors "gave very little actual guidance to district courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results." Since *Perdue,* however, the Fifth Circuit and the Eastern District of Louisiana have continued to weigh the *Johnson* factors when considering whether to decrease or enhance the lodestar in attorney's fee cases. *See, e.g., Ransom v. M. Patel Enters., Inc.,* 734 F.3d 377, 388 n.17 (5th Cir. 2013); *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013); *Altier v. Worley Catastrophe Response, LLC*, No. 11-241, 2012 WL 161824, at *22 (E.D. La. Jan. 18, 2012) (Wilkinson, M.J.). Accordingly, this Court does the same. *See Ahmed v. Bros. Food Mart, et al.*, No. 13-5948, Rec. Doc. 33 (E.D. La. Sept. 12, 2014) (Brown, J.).

to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case imposed time constraints; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) whether the case was "undesirable;" (11) the type of attorney-client relationship and whether the relationship was long-standing; and (12) awards made in similar cases.[204] The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar award, multiplying the number of hours reasonably expended on the case by an appropriate hourly rate in the community for such work, already took that factor into account.[205] Such reconsideration is impermissible double-counting.[206]

The Court will first address the requested hourly rate. "'Reasonable' hourly rates 'are to be calculated according to the prevailing market rates in the relevant community.'"[207] The applicant bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates,[208] which necessarily includes an affidavit of the attorney performing the work and information of rates actually billed and paid in similar lawsuits.[209] "When an attorney's customary billing rate is the rate at which the attorney requests the lodestar to be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the

---

[204] *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

[205] *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).

[206] *Id.*

[207] *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886 (1984)).

[208] *Blum*, 465 U.S. at 897.

[209] *Id.* at 895 n.11.

hourly rate to be allowed."[210] A court abuses its discretion when it awards attorney's fees without "a reasonably specific explanation for all aspects of a fee determination, including any award of an enhancement."[211]

In support of his request for a rate of $300 per hour, Gahagan submits his own declaration stating that his normal billing rate is $300 per hour, as well as the declarations of two other attorneys who practice within the Eastern District of Louisiana and assert that Gahagan is a "known expert in the field of immigration law and the Freedom of Information Act in Louisiana" and that they are not aware of other attorneys in the Eastern District of Louisiana who would perform these types of services for less than $300 per hour.[212] In addition, Gahagan submits invitations he has received for speaking engagements and the 2016 edition of Super Lawyers Magazine listing Gahagan as a Super Lawyer Rising Star.[213] Gahagan also asserts that he is the owner of The Immigration Law Firm of New Orleans and specializes in the areas of immigration law and the Freedom of Information Act, and additionally submits a list of 22 cases that he has litigated or is currently litigating involving immigration, FOIA, or both.[214] In support of his assertion that $300 per hour is the prevailing market rate, Gahagan cites *Hernandez*, stating that in a factually and legally similar FOIA case, the court awarded $300 per hour to an attorney with more than eight years experience.[215] However, in

---

[210] *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995).

[211] *Perdue,* 559 U.S. at 558.

[212] Rec. Doc. 49-6 at pp. 2–5.

[213] Rec. Docs. 49-5, 49-6, 54-2, 57-2.

[214] Rec. Doc. 49-5 at pp. 2–3.

[215] Rec. Doc. 49-2 at p. 19 (citing *Hernandez v. U.S. Customs and Border Protection Agency*, No. 10-4602, 2012 WL 398328, at *14–16  (E.D. La. Feb. 7, 2012) (Barbier, J.)).

opposition, Defendant contends that the Fifth Circuit in 2014 recently rejected Gahagan's argument in a case with "similar content and briefing" that an award of $300 per hour was appropriate, stating that the court there found that "$300 per hour appeared to be atypically high."[216] The Fifth Circuit, in *DaSilva v. United States Citizenship and Immigration Services*, affirmed the district court's award of an hourly rate of $200 per hour for Gagahan, noting that such an hourly rate was "within the middle of the range."[217]

The Court notes that the affidavits submitted by Gahagan are from attorneys working, not in the field of immigration law, but in "family law, personal injury and business litigation" and "estate, succession, real estate and commercial law," and therefore are not persuasive in determining the market rate for immigration attorneys and attorneys involved in FOIA litigation.[218] Nor does Gahagan provide information regarding rates actually billed and paid in similar lawsuits to support his claim for an hourly rate of $300.[219]

Although Defendant does not submit any evidence challenging Gahagan's affidavits or declaration, it asserts that a review of the applicable jurisprudence does not support an hourly rate of $300 per hour for an attorney with 7-8 years of experience.[220] Defendant cites several cases from the Eastern District of Louisiana, as well as a Louisiana Fourth Circuit Court of Appeal case, decided in the last twenty years in which courts have awarded less than $300 per hour, including a case decided in 2008 where another section of the Eastern District of Louisiana awarded $150 per

---

[216] Rec. Doc. 50 at pp. 6–7 (citing *DaSilva*, 599 F. App'x at 543).

[217] 599 F. App'x at 543.

[218] Rec. Doc. 49-6.

[219] *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).
[220] Rec. Doc. 50 at p. 7.

hour for a partner and $140 an hour for a junior partner,[221] and a 2005 case in which the Louisiana

Circuit Court of Appeal found that $200 per hour was not a rate in excess of community standards.[222]

However, the most recent of these cases was decided seven years ago, and therefore, these cases

hold substantially less weight regarding the current prevailing rates in the New Orleans area. Upon

review of more recent cases from the Eastern District of Louisiana, the Court concludes that $200

an hour is appropriate given Gahagan's eight years of experience in immigration law and FOIA.[223]

Moreover, as discussed above, the Fifth Circuit recently held that a district court that had awarded

Gahagan $200 per hour in attorney's fees was within his discretion as $200 per hour was in the

middle of the range of rates for attorneys with Gahagan's experience.[224]

Next, the Court turns to the number of hours reasonably expended on this litigation. The

Fifth Circuit in *Saizan v. Delta Concrete Products Co.* stated that a plaintiff seeking attorney's fees

has "the burden of showing the reasonableness of the hours billed and, therefore, [is] also charged

with proving that [he] exercised billing judgment. Billing judgment requires documentation of the

hours charged and of the hours written off as unproductive, excessive, or redundant."[225] Gahagan

asserts that he has reasonably expended 68.5 hours on the merits of the litigation and 16 hours on

---

[221] *Id.* (citing *St. Stephen's Missionary Baptist Church v. Taylor*, 2008 WL 4057162 (E.D. La. Aug. 29, 2008)).

[222] *Id.* (citing *Motton v. Lockheed Martin Corp.*, 2003-CA-0962 (La. App. 4 Cir. 3/5/05), 900 So. 2d 901).

[223] *See Kennedy v. Generator & Utility Serv. Corp.*, No. 12-2499, 2013 WL 3456974, at *2 (E.D. La. July 9, 2013) (Wilkinson, M.J.) (finding that $160 per hour was within the range of reasonable rates for an attorney with almost six years of experience); *Gulf Coast Facilities Mgmt., LLC v. BG LNG Servs., LLC*, No. 09-3822, 2010 WL 2773208, at *6 (E.D. La. July 13, 2010) (Roby, M.J.) (finding a rate of $180 per hour reasonable for an attorney who had been practicing for a little over six years); *Marks v. Standard Fire Ins. Co.*, No. 09-1947, 2010 WL 487403, at *2 (E.D. La. Feb. 3, 2010) (Roby, M.J.) (finding that a rate of $185 per hour was reasonable for an attorney with seven years of experience).

[224] *DaSilva v. United States Citizenship & Immigration Servs.*, 599 F. App'x 535, 543 (5th Cir. 2014).

[225] 448 F.3d 795, 799 (5th Cir. 2006).

the instant motion.[226] In support, he attaches his time records documenting the time he spent working on both the merits of the litigation and the instant motion.[227] In opposition, Defendant asserts that Gahagan's claim for attorney's fees should be cut for his use of poor billing judgment in light of the fact that although Gahagan has litigated several FOIA cases in the past, he "somehow 'researched' for 7.6 hours before drafting the instant complaint for 3.8 hours" and the majority of his motions for summary judgment are "bloated with the same canned caselaw and statutory guidance."[228]

Gahagan has not documented any hours "written off as unproductive, excessive, or redundant" and therefore has failed to meet his burden of showing that he exercised billing judgment.[229] "The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment."[230] In his declaration, Gahagan asserts that, prior to the filing of this case, he had litigated sixteen immigration and/or FOIA related cases.[231] However, despite this experience, Gahagan asserts that he spent 7.6 hours performing research before drafting his complaint.[232] Furthermore, Gahagan asserts that he expended a total of 21.2 hours researching issues for his three motions for summary judgment and 6.3 hours researching issues for his reply memoranda regarding those motions.[233] However, again,

---

[226] Rec. Doc. 54 at p. 18.

[227] Rec. Doc. 54 at pp. 12–16.

[228] Rec. Doc. 50 at pp. 10–11.

[229] *Walker v. U.S. Dep't of Hous. and Urban Dev.*. 99 F.3d 761, 769–70 (5th Cir. 1996).

[230] *Id.* at 770.

[231] Rec. Doc. 49-5 at p. 3.

[232] Rec. Doc. 54 at p. 12.

[233] *Id.* at pp. 12–13.

Gahagan represents that he has litigated many FOIA cases in the past and therefore this number appears excessive. For example, Gahagan, in his first motion for summary judgment, argued that it is unlawful under the plain meaning of FOIA to refer responsive agency records to another agency.[234] In reply to Defendant's opposition to the motion for summary judgment, Gahagan cited a case that he had appealed to the Fifth Circuit, *Gahagan v. United States Citizenship and Immigration Services*.[235] In that case, Gahagan had made the same argument, asserting before the Fifth Circuit that the district court had erred in granting judgment in favor of defendant USCIS because pages that had been referred to ICE were improperly withheld under FOIA.[236]

Furthermore, there is substantial overlap in the arguments made across the motions for summary judgment and the caselaw cited by Gahagan.[237] In all three motions for summary judgment, citing substantially the same caselaw, Gahagan argued that when an agency refuses to produce responsive agency records to the FOIA requestor within twenty business days, it has improperly withheld agency records in violation of FOIA.[238] In both the second and third motions for summary judgment, citing the same caselaw, Gahagan argued that Defendant should be ordered to produce the withheld agency records for an *in camera* inspection.[239] Gahagan's time records reflect the hours of an attorney who has to research and draft motions working from a blank slate, rather than an attorney with expertise in the subject matter and experience in FOIA litigation. Although it is

---

[234] Rec. Doc. 10-2 at p. 7.

[235] Rec. Doc. 16 at p. 4 (citing 602 F. App'x 198 (5th Cir. 2015) (per curiam)).

[236] *Id.*

[237] Rec. Docs. 10-2, 21-2, 30-2.

[238] Rec. Doc. 10-2 at pp. 11–20; Rec. Doc. 21-2 at pp. 11–19; Rec. Doc. 30-2 at pp. 10–13.

[239] Rec. Doc. 21-2 at pp. 8–10; Rec. Doc. 30-2 at pp. 8–10.

prudent to ensure there wasn't any intervening caselaw, the sheer number of hours spent on researching and drafting in an area Gahagan claims to have expertise in is excessive.[240] Therefore, in light of the fact that Gahagan has not met his burden of showing that he exercised billing judgment and considering the redundant and excessive nature of Gahagan's hours, the Court finds that a 25% reduction is appropriate.[241] Applying a 25% reduction for billing judgment, the number of hours reasonably expended on this case is 63.38.[242]

Multiplying the number of hours reasonably expended in this case, 63.38, by the hourly rate of $200, the lodestar is $12,676. There is a strong presumption that the lodestar is sufficient and "a party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified."[243] Gahagan seeks an upward adjustment of the lodestar based upon the *Johnson* factors of preclusion of other employment and undesirability of the case.[244] Gahagan asserts that he is a sole practitioner and was precluded from accepting two worthy cases as a result of this litigation, causing a loss of $10,000 in income.[245] Gahagan also asserts that the undesirability of the case factor is intended to incentivize attorneys to accept undesirable cases, most often in the civil rights context, and he was forced to file

---

[240] Here, Gahagan is being awarded $200 per hour which is a rate in the middle of the range. *DaSilva v. U.S. Citizenship and Immigration Servs.*, 599 F. App'x 535, 543 (5th Cir. 2014)).

[241] *Walker v. U.S. Dep't of Hous. and Urban Dev.*. 99 F.3d 761, 770 (5th Cir. 1996) (finding that 15% was the appropriate reduction); *Lalla v. City of New Orleans*, 161 F. Supp. 2d 686, 699–707 (E.D. La. 2001) (Livaudais, J.) (finding that 25% was the appropriate reduction).

[242] Gahagan asserted that he had spent 84.5 hours on the case. Rec. Doc. 54 at p. 18. 84.5 x .25 = 21.125. 84.5-21.125=63.375.

[243] *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010).

[244] Rec. Doc. 49-2 at pp. 21–23.

[245] *Id.* at p. 21.

costly and time-consuming litigation because the government refused to follow the Mandatory Access Law, refused to follow FOIA's 20-day mandate in producing the requested agency records and *Vaughn* index, and refused to properly adjudicate Gahagan's appeal "all the while knowing that Mr. Amador's deportation hearing was fast approaching."[246]

The Court finds that Gahagan has not met his burden of demonstrating that an enhanced fee is justified in this case. Gahagan has not provided any further explanation regarding his assertion that he lost $10,000 in income as a result of this case. No information regarding this assertion was provided in his declaration, or in any other exhibit. Gahagan's bare assertion that he was precluded from taking two cases and therefore lost $10,000 is insufficient to rebut the "strong presumption of the reasonableness of the lodestar amount."[247] Furthermore, Gahagan asserts that the undesirability of this case warrants an upward adjustment.[248] However, in support, Gahagan only cites the government's actions which led to the filing of this lawsuit, and fails to explain why this makes litigation of the case undesirable.[249] Therefore, Gahagan has failed to meet his burden of showing that the case is so undesirable as to warrant an upward adjustment.

Defendant seeks to reduce the lodestar amount "given the amount of material produced in respect to Plaintiff's broad FOIA requests and the reasonableness of USCIS's withholding– withholding duplicative documents."[250] Defendant contends that Gahagan should only be

---

[246] *Id.* at p. 23 (citing *Cooper v. Pentecost*, 77 F.3d 829 (5th Cir. 1996)).

[247] *Saizan v. Delta Concrete Products Co.,* 448 F.3d 795, 800 (5th Cir. 2006).

[248] Rec. Doc. 49-2 at p. 23.

[249] *Id.*

[250] Rec. Doc. 50 at p. 9.

compensated for time spent on successful claims, the production of 10 duplicate documents.[251] The degree of success obtained is perhaps the most important Johnson factor.[252] In support of its assertion that any award of attorney's fees should be reduced on this ground, Defendant cites a District Court for the District Columbia case, *Electronic Privacy Information Center v. Department of Homeland Security*, where, it asserts, the court awarded only $3,321.95 out of the requested $22,000 in attorney's fees "after the court weeded out improper billing" and reduced the fees because the plaintiff had only won on one of its claims and devoted only 6 of 42 pages on that particular argument.[253] In opposition, Gahagan cites *Hernandez*, where the court stated that "an agency cannot put a requestor 'through the time and expense of enforcing compliance with FOIA and then complain that the resources expended were out of proportion to the good obtained.'"[254]

In his complaint, Gahagan sought the disclosure of fifty-one pages of information that he alleged were unlawfully withheld from him, the only reason given being that his request was "Referred to Immigration and Customs Enforcement," seventeen pages of information that he alleged were unlawfully fully redacted without the segregable portions being disclosed, and the production of a *Vaughn* index fully describing the search methods employed and individually describing the lawful basis for each exemption on each page of information that was not produced.[255]

---

[251] *Id.* at pp. 9–10.

[252] *Abner v. Kansas City So. Ry. Co.*, 541 F.3d 372, 376–77 (5th Cir. 2008) (citing *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

[253] Rec. Doc. 50 at p. 9 (citing 982 F. Supp. 2d 56 (D.D.C. 2013)).

[254] Rec. Doc. 54 at p. 10 (citing 2012 WL 398328, at *14)).

[255] Rec. Doc. 1 at pp. 6–7.

Gahagan filed three motions for summary judgment in this litigation.[256] In addressing Gahagan's first motion for summary judgment, the Court found that it was unclear whether the 17 pages allegedly produced by Defendant on September 12, 2014 were the same 17 pages that Gahagan claims were withheld in full, and therefore denied his motion.[257] The Court denied as moot Gahagan's motion for summary judgment to the extent that he sought relief premised upon ICE's alleged failure to produce referred documents as it "is undisputed that ICE produced the referred documents after making redactions."[258] The Court granted Gahagan's second motion for summary judgment to the extent that Gahagan asserted that Defendant's referral to ICE led to improper withholding of responsive documents because 10 pages of the 51 "referred" documents disclosed on December 4, 2014, were improperly withheld as "duplicates."[259] The Court also granted Gahagan's second motion for summary judgment to the extent that he sought that the Court order Defendant to produce a *Vaughn* index covering all of the documents in its December 4, 2014 disclosures.[260]

In Gahagan's third motion for summary judgment, he asserted that two documents were being unlawfully withheld without the reasonably segregable portions of the records being released and that there was no legally required explanation of why the cited FOIA exemption applied to one of the documents, Document 118.[261] In response, Defendant described its failure to include

---

[256] Rec. Docs. 10, 21, 30.

[257] Rec. Doc. 27 at p. 38.

[258] *Id.* at p. 56.

[259] *Id.* at pp. 56–57.

[260] *Id.* at p. 57.

[261] Rec. Doc. 30-2 at pp. 1–2.

Document 118 on the *Vaughn* index as "inadvertent" and submitted a revised *Vaughn* index.[262] The Magistrate Judge ordered Defendant to produce both of the documents discussed in the third motion for summary judgment to the Court for *in camera* review.[263] Upon reviewing the documents *in camera*, the Magistrate Judge found that the documents were properly redacted.[264]

In sum, during the course of this litigation, Defendant disclosed, with redactions, the fifty-one pages of documents that Gahagan originally sought in his complaint, and the Court ordered Defendant to disclose ten of the fifty-one pages that Defendant had withheld on the grounds that they were duplicates. Furthermore, the Court ordered Defendant to produce a *Vaughn* index covering all of the documents in its December 4, 2014 disclosures, and Defendant submitted a revised *Vaughn* index to include a document it asserted it had inadvertently failed to address after Gahagan filed a third motion for summary judgment. The Court is not persuaded by Defendant's argument that Gahagan had limited success because, in fact, during the course of this litigation, he obtained access to the majority of the information he sought in his complaint.

The parties do not request an upward or downward departure based on any of the remaining *Johnson* factors. Reviewing these factors, the Court finds that some of the factors, whether the fee is fixed or contingent, and the nature and length of the professional relationship with the client, are inapplicable given that Gahagan is an attorney who represented himself pro se. The Court has already discussed the factor of "awards made in similar cases." The remaining factors confirm the reasonableness of the lodestar amount. Having found that none of the *Johnson* factors warrant an adjustment of the lodestar of $12,676, the Court will award attorney's fees in the amount of $12,676.

---

[262] Rec. Doc. 31 at p. 2.

[263] Rec. Doc. 37.

[264] Rec. Doc. 38 at pp. 3–4.

### 4. Litigation Costs

Pursuant to 5 U.S.C. § 552(a)(4)(E), a court may also assess "litigation costs reasonably incurred." Gahagan seeks $462.87 in costs, $400 of which is for the filing fee and the remainder of which is for postage and printing costs.[265] Defendant does not state any opposition to Gahagan's recovery of litigation costs. The Court therefore finds that the costs were reasonably incurred and will award Gahagan the full $462.87 requested.

### 5. Deadline to Pay Award of Attorney's Fees

Finally, Gahagan requests that the Court set a deadline for Defendant to comply with any Court Order requiring Defendant to pay him attorney's fees.[266] The Court declines to do so. If Defendant fails to comply with a Court Order, Gahagan may file an appropriate motion.

### IV. Conclusion

The Court has found that Gahagan has demonstrated that he has both "substantially prevailed" in this litigation and that he is entitled to an award of reasonable attorney's fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E).

Accordingly,

**IT IS HEREBY ORDERED** that Gahagan's "Motion for Attorney's Fees and Costs Pursuant to the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E)"[267] is **GRANTED**.

---

[265] Rec. Doc. 54 at pp. 15, 18.

[266] Rec. Doc. 49 at p. 1.

[267] Rec. Doc. 49.

**IT IS FURTHER ORDERED** that Defendant United States Citizenship and Immigration Services shall remit payment to Gahagan in the amount of $13,138.87, representing $12,676 for attorney's fees and $462.87 for litigation costs.

**NEW ORLEANS, LOUISIANA**, this  21st day of March, 2016.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**